**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUSTIN RINGGOLD-LOCKHART; NINA
RINGGOLD,

 *Plaintiffs-Appellants*,

v.

COUNTY OF LOS ANGELES; ANDREA
SHERIDAN ORDIN, erroneously sued
as Andrea Sheridan Orin, in her
Official Capacity as County
Counsel; JERRY BROWN, in his
Official Capacity as Governor of the
State of California; KAMALA
HARRIS, in her Official Capacity as
Attorney General of the State of
California; JOHN A. CLARKE, in his
Official and Administrative Capacity
as Executive Officer of the Superior
Court of the County of Los Angeles,

 *Defendants-Appellees*.

No. 11-57231

D.C. No.
2:11-cv-01725-
R-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
December 2, 2013—Pasadena, California

Filed August 4, 2014

Before: Harry Pregerson, Marsha S. Berzon,
and Morgan Christen, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Civil Rights

The panel vacated the district court's order declaring plaintiffs, attorney Nina Ringgold and her son Justin Ringgold-Lockart, vexatious litigants and imposing a pre-filing order, and remanded for further proceedings.

The panel held that in light of the constitutional concerns such pre-filing orders implicate, the district court erred by relying in large part on Nina Ringgold's motions practice over the course of just two federal lawsuits, without considering less restrictive sanctions. The district court also erred by holding Nina Ringgold's state litigation against Justin Ringgold-Lockhart, without a record indicating that he participated in that litigation. Finally, the panel held that there was an insufficiently close fit between the terms of the injunction and the problem it purported to address.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Nina Ringgold (argued), Law Offices of Nina R. Ringgold, Northridge, California, for Plaintiffs-Appellants.

Marc Jesse Wodin (argued), Law Offices of Marc J. Wodin, Calabasas, California, for Defendants-Appellees County of Los Angeles and Andrea Sheridan Ordin.

David Adida (argued), Deputy State Attorney General, Office of the California Attorney General, Los Angeles, California, for Defendants-Appellees Jerry Brown and Kamala Harris.

Kevin Michael McCormick (argued), Benton, Orr, Duval & Buckingham, Ventura, California, for Defendant-Appellee John A. Clarke.

---

**OPINION**

BERZON, Circuit Judge:

This appeal requires us to consider the limits of a federal court's authority to impose pre-filing restrictions against so-called vexatious litigants. The case arises from one of many episodes in a legal saga involving Nina Ringgold and the Los Angeles Probate Court. Ringgold brought a federal lawsuit challenging the Probate Court's authority to remove her as a trustee of the Aubry Family Trust. The district court dismissed the suit in a series of rulings, culminating in an order declaring Ringgold and co-plaintiff, Justin Ringgold-Lockhart, vexatious litigants. Ringgold and Ringgold-Lockhart appeal the vexatious litigant order. We reverse.

## I.

Ringgold, an attorney, is a former trustee of the Aubry Family Trust ("the Trust").  According to her complaint, the Trust was established after the Aubry family was excluded from purchasing a home in a white Los Angeles neighborhood by race-based restrictive covenants.  The Trust's purpose was to benefit and empower the African-American community of South Central Los Angeles by providing for future generations.  After Robert Aubry died in 2002, Ringgold and another individual became trustees.  For reasons not entirely clear, the Los Angeles Probate Court in 2005 removed Ringgold and replaced her with a new trustee, Myer Sankary.  *See Sankary v. Ringgold*, No. B210169, 2009 WL 386969, *3 (Cal. App. Feb. 18, 2009).  Ringgold alleges that Sankary has since liquidated the trust and abused his position.

Ringgold challenged her removal in state court, lost, and was declared a vexatious litigant by the state courts.  *See id.*  She then filed suit in federal court.  Ringgold-Lockhart — Ringgold's son and an alleged beneficiary of the Aubry Family Trust — joined her suit as a named plaintiff.

After dismissing Ringgold and Ringgold-Lockhart's (together, "the Ringgolds") claims, the district court issued an order on December 6, 2011 declaring the Ringgolds vexatious litigants and imposing a pre-filing condition.  The court noted that it warned the Ringgolds that they were at risk of being declared vexatious litigants on September 19, 2011 and that on November 7, 2011, it entered a tentative ruling deeming them vexatious.  The court described the scope of the order as follows:

> Plaintiffs will need permission from this Court prior to filing any action that relates to the Aubry Revocable Family Trust or the administration of state courts or probate courts. The Court will approve all filings that it deems to be meritorious, not duplicative, and not frivolous.
>
> The Court notes that Plaintiff Nina Ringgold is subject to the order in her capacity as an individual, not as an attorney. This distinction is made in order to comply with the holding of *Weissman v. Quail Lodge Inc.*, 179 F.3d 1194 (9th Cir. 1999), which declared that attorneys could not be sanctioned as vexatious litigants, because they are merely appearing on behalf of a client. Plaintiff Nina Ringgold will be able to continue her law practice as she sees fit, but she will be unable to raise her own claims or the claims of her son, Justin Lockhart-Ringgold [sic] to the extent that they relate to the Aubry Revocable Family Trust or the administration of state courts or probate courts.

The court appended a listing of the Ringgolds' filings in the instant case and in an earlier federal case, *Ringgold-Lockhart v. Sankary*, No. 09-cv-9215 (C.D. Cal. filed Dec. 15, 2009), that, in its view, supported the order.

## II.

Federal courts can "regulate the activities of abusive litigants by imposing carefully tailored restrictions under . . .

appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (quotation marks omitted). Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), "enjoining litigants with abusive and lengthy [litigation] histories is one such . . . restriction" that courts may impose.[1] *De Long*, 912 F.2d at 1147.

Restricting access to the courts is, however, a serious matter. "[T]he right of access to the courts is a fundamental right protected by the Constitution." *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998). The First Amendment "right of the people . . . to petition the Government for a redress of grievances," which secures the right to access the courts, has been termed "one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002) (internal quotation marks omitted, alteration in original); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (noting that the Supreme Court has located the court access right in the Privileges and Immunities clause, the First Amendment petition clause, the Fifth Amendment due process clause, and the Fourteenth Amendment equal protection clause).

Profligate use of pre-filing orders could infringe this important right, *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (per curiam), as the pre-clearance

---

[1] The district court cited and relied on 28 U.S.C. § 1651(a) as the source of its authority to issue the pre-filing order. While the district court's local rules permit courts, "at [their] discretion," to "proceed by reference to the Vexatious Litigants statute of the State of California, Cal. Code Civ. Proc. §§ 391–391.7," they do not "require that such a procedure be followed[.]" C.D. Cal. Local Rule 83–8.4. Because the district court did not "proceed by reference to" the California Vexatious Litigant statute, we do not consider it, or Local Rule 83–8.4, here.

requirement imposes a substantial burden on the free-access guarantee. "Among all other citizens, [the vexatious litigant] is to be restricted in his right of access to the courts. . . . We cannot predict what harm might come to him as a result, and he should not be forced to predict it either. What he does know is that a Sword of Damocles hangs over his hopes for federal access for the foreseeable future." *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990).

Out of regard for the constitutional underpinnings of the right to court access, "pre-filing orders should rarely be filed," and only if courts comply with certain procedural and substantive requirements. *De Long*, 912 F.2d at 1147. When district courts seek to impose pre-filing restrictions, they must: (1) give litigants notice and "an opportunity to oppose the order before it [is] entered"; (2) compile an adequate record for appellate review, including "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed"; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered." *Id.* at 1147–48.

The first and second of these requirements are procedural, while the "latter two factors . . . are substantive considerations . . . [that] help the district court define who is, in fact, a 'vexatious litigant' and construct a remedy that will stop the litigant's abusive behavior while not unduly infringing the litigant's right to access the courts." *Molski*, 500 F.3d at 1058. In "applying the two substantive factors," we have held that a separate set of considerations employed by the Second Circuit Court of Appeals "provides a helpful framework." *Id.* The Second Circuit considers the following five substantive factors to determine "whether a party is a

vexatious litigant and whether a pre-filing order will stop the vexatious litigation or if other sanctions are adequate":

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). The final consideration — whether other remedies "would be adequate to protect the courts and other parties" is particularly important. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004). In light of the seriousness of restricting litigants' access to the courts, pre-filing orders should be a remedy of last resort.

We review the district court's compliance with these procedural and substantive standards for an abuse of discretion.[2] *Molski*, 500 F.3d at 1056.

---

[2] The Ringgolds' contention that filing a notice of appeal divested the district court of jurisdiction to issue the vexatious litigant order is without merit. "A district court retains jurisdiction to enforce the judgments it enters," including through issuance of vexatious litigant orders. *Wood v.*

## A.  Notice and Opportunity To Be Heard

The district court entered a tentative ruling declaring the Ringgolds vexatious litigants on November 7, 2011.  At that time, the district court notified the Ringgolds that it was considering "all of the complaints and motions filed in this court, as well as the various appeals and writs of certiorari," and "a number of state court decisions that ultimately led to Plaintiff Ringgold being declared a vexatious litigant."  Its tentative order gave the Ringgolds two weeks to argue against a final order and set the matter for a hearing.

The Ringgolds filed a brief opposing the vexatious litigant designation and attached declarations from both Ringgold and Ringgold-Lockhart.  The court heard oral argument from the

---

*Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983).

We have jurisdiction over the Ringgolds' appeal of the district court's order under 28 U.S.C. § 1291.  *Molski*, 500 F.3d at 1054.  We may exercise this jurisdiction even absent an indication that the Ringgolds have already been denied access to the court because of the district court's order.  *De Long*, 912 F.2d at 1146 n.2; *Moy*, 906 F.2d at 470.  Relying on *Molski*, 500 F.3d at 1056, the Ringgolds maintain that we may not consider the arguments given or briefs filed by appellees who were not parties to the vexatious litigant order, which was entered sua sponte by the district court.  In *Molski*, however, we dismissed appellees on their own motion, because those particular appellees had no interest in litigating the vexatious litigant order, as evidenced by their motion seeking to be dismissed from the appeal.  *Id.*  Here, although it was the district court that initiated the vexatious litigant order at issue, there is a substantial likelihood that the Ringgolds will name these appellees in future lawsuits.  Appellees therefore have "a cognizable interest in the outcome of" this appeal; there is no cause to dismiss them from this appeal, and we may consider their arguments.  *Id.* (quoting *H.C. v. Koppel*, 203 F.3d 610, 612 (9th Cir. 2000)).

Ringgolds before it entered the vexatious litigant order.  In sum, the district court provided proper notice and an opportunity to be heard, in accordance with our case law's first procedural requirement and due process.  *See Molski*, 500 F.3d at 1058.

## B.  Adequate Record for Review

"An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed."  *De Long*, 912 F.2d at 1147.  In *Molski*, we held that a district court compiled a proper record for review where "[t]he record before the district court contained a complete list of the cases filed by Molski in the Central District of California, along with the complaints from many of those cases," and where "[a]lthough the district court's decision entering the pre-filing order did not list every case filed by Molski, it did outline and discuss many of them."  500 F.3d at 1059.

We conclude that the district court compiled an adequate record to permit us to review the basis of its order.  The district court discussed and explained the litigation history leading to its order, and appended a list of twenty-one district court filings, including motions, that it viewed as supporting its order.  In the body of the order, the court cited the Ringgolds' prior federal suit, which "featured a 110-page first amend[ed] complaint with sixteen causes of action and named at least twelve defendants, including a number of officials with the County of Los Angeles, the Superior Court of Los Angeles County and various judges."  The court also cited the present case, which "featured a 31-page complaint with eleven causes of action and . . . named the County of Los Angeles, as well as other county and state officials, including

Governor Jerry Brown and Secretary of State Kamala Harris."

In addition, the district court (1) noted the Ringgolds' state court litigation, which it described as "even more extensive—and frivolous;" and (2) cited to the California Court of Appeal's decision in *Sankary*, 2009 WL 386969, which held Ringgold was a vexatious litigant pursuant to California Code of Civil Procedure section 391(b)(3) and imposed a pre-filing restriction against her. *Sankary* outlined Ringgold's history of fighting her removal as trustee through state court litigation.[3]   2009 WL 386969 at *3.   The California Court of Appeal explained that it held Ringgold vexatious because she "repeatedly filed meritless papers [in that court] and in the probate court which frivolously assert she need not obey an order [to turn over documents belonging to the Trust] which has caused unnecessary delay and expense." *Id.* at *2.

Together, the list of federal cases, allegedly baseless motions, and the district court's reference to the California Court of Appeal's reasoned decision in the *Sankary* case, provide an adequate record for this Court to review the merits of the district court's order.  We therefore conclude that the order comports with the procedural requirements outlined in *De Long*.  As will be explained, it is the substance of the court's injunction and its breadth that concern us.

---

[3] The California Court of Appeal cited fourteen state appellate matters that were initiated by Ringgold and decided adversely to her. *Sankary*, 2009 WL 386969 at *1.  However, not all of the state appellate cases cited appear to relate to the instant litigation.  For instance, one of the cases cited is titled *In re Marriage of Lockhart* and relates to divorce proceedings. *Id.*

## C. Substantive Findings of Frivolousness or Harassment

"[B]efore a district court issues a pre-filing injunction . . . it is incumbent on the court to make 'substantive findings as to the frivolous or harassing nature of the litigant's actions.'" *De Long*, 912 F.2d at 1148 (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988) (per curiam)).   To determine whether the litigation is frivolous, district courts must "look at 'both the number and content of the filings as indicia' of the frivolousness of the litigant's claims." *Id.* (quoting same). While we have not established a numerical definition for frivolousness, we have said that "even if [a litigant's] petition is frivolous, the court [must] make a finding that the number of complaints was inordinate." *Id.*  Litigiousness alone is not enough, either: "'The plaintiff's claims must not only be numerous, but also be patently without merit.'"   *Molski*, 500 F.3d at 1059 (quoting *Moy*, 906 F.2d at 470).

As an alternative to frivolousness, the district court may make an alternative finding that the litigant's filings "show a pattern of harassment."   *De Long*, 912 F.3d at 1148. However, courts must "be careful not to conclude that particular types of actions filed repetitiously are harassing," and must "[i]nstead . . . 'discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court.'"   *Id.* at 1148 n.3 (quoting *Powell*, 851 F.2d at 431).

Finally, courts should consider whether other, less restrictive options, are adequate to protect the court and parties. *See Molski*, 500 F.3d at 1058; *Cromer*, 390 F.3d at 818; *Safir*, 792 F.2d at 24.

Here, the district court found the Ringgolds vexatious primarily on the basis of the current case and an earlier federal case. As an initial matter, two cases is far fewer than what other courts have found "inordinate." *See, e.g.*, *Molski*, 500 F.3d at 1060 (roughly 400 similar cases); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523, 1526 (9th Cir. 1983) (thirty-five actions filed in 30 jurisdictions); *In re Oliver*, 682 F.2d 443, 444 (3d Cir. 1982) (more than fifty frivolous cases); *In re Green*, 669 F.2d 779, 781 (D.C. Cir. 1981) (per curiam) (between 600 and 700 complaints).

The district court also cites the Ringgolds' motions practice, taking issue with their "numerous motions to vacate prior decisions or relief from judgment." But examination of the court's list of "baseless motions" reveals that this description is not entirely accurate. For example, the district court granted one of the motions. A successful motion is neither "baseless" nor "frivolous." The list also includes motions, accompanied by medical records, that Ringgold filed requesting a medical accommodation in the briefing schedule — also not frivolous. And the list includes a *joint* motion to stipulate to a change in the briefing schedule. Again, not frivolous.

Most troubling, the district court's list includes the Ringgolds' response to its tentative order finding them vexatious. As explained, the Ringgolds had a due process right to be heard on this matter. The district court faults the Ringgolds for "reiterating old facts and arguments" in their response to the court order. As the Ringgolds had to argue that their filings were not frivolous, such repetition was inevitable. What's more, the district court invited their

response, so it is particularly inappropriate to hold it against them.

Whether a litigant's motions practice in two cases could ever be so vexatious as to justify imposing a pre-filing order against a person, we do not now decide.  Such a situation would at least be extremely unusual, in light of the alternative remedies available to district judges to control a litigant's behavior in individual cases.

The district court, however, failed to consider whether other remedies were adequate to curb what it viewed as the Ringgolds' frivolous motions practice.  The Federal Rules of Civil Procedure provide courts with a means to address frivolous or abusive filings: Rule 11 sanctions.  Indeed, "Rule 11's express goal is deterrence." *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994).  "[W]hen there is . . . conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *see also* Fed. R. Civ. P. 11 advisory committee's note to 1993 Amendments, subdivision (d). Similar to the limitation courts have imposed on vexatious litigant orders, Rule 11 requires that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct."  Fed. R. Civ. P. 11(c)(4).  Rule 11 provides a list of sanctions of varying severity that courts may, in their discretion, impose: "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  *Id.*  Before entering this broad pre-filing order, applicable to other cases than this one, the district court

assuredly should have considered whether imposing sanctions such as costs or fees on the Ringgolds would have been an adequate deterrent.  *See Cromer*, 390 F.3d at 818.

The district court also considered Ringgold's pattern of state court litigation.  It was entitled to do so, as district courts enjoin future litigation out of concern for the affected parties, as well as out of concern for the courts themselves. And a pattern of frivolous or abusive litigation in different jurisdictions undeterred by adverse judgments may inform a court's decision that an injunction is necessary.

There is, however, no indication that Ringgold-Lockhart was a party to the state court litigation, so the state court litigation does not support finding *him* vexatious and imposing a pre-filing restriction against him.  Aside from the district court's failure to consider alternative sanctions before issuing this injunction, it was also error to issue an order against Ringgold-Lockhart on the basis of state litigation in which he played no part.

## D.  Narrow Tailoring

Finally, pre-filing orders "must be narrowly tailored to the vexatious litigant's wrongful behavior."  *Molski*, 500 F.3d at 1061.  In *Molski*, we approved the scope of an order because it prevented the plaintiff from filing "only the type of claims Molski had been filing vexatiously," and "because it will not deny Molski access to courts on any . . . claim that is not frivolous."  *Id.*

Here, the scope of the order is too broad in several respects.

*First*, it provides that the court "will approve all filings that it deems to be meritorious, not duplicative, and not frivolous." The screening order should have stopped at "not duplicative, and not frivolous."

By providing that the court will not allow a new action to be initiated unless the court deems the action "meritorious," the district court added a screening criteria that is not narrowly tailored to the problem before it, and is in fact unworkable. It is one thing for courts at an early stage of litigation to filter out frivolous suits. Courts routinely perform this task, as the Rules of Civil Procedure prohibit frivolous filings. *See* Fed. R. Civ. P. 11(b). But courts cannot properly say whether a suit is "meritorious" from pleadings alone. A lawsuit need not be meritorious to proceed past the motion-to-dismiss stage; to the contrary, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks omitted). And even as to the propriety of a Rule 12(b)(6) dismissal, whether a case merits dismissal for failure to state a claim is often determinable only after briefing and argument; it is often not a decision accurately to be made at a pre-filing stage. Because this pre-filing order requires that only "meritorious" cases survive the court's screening, the order is not narrowly tailored to address the concern that the Ringgolds will continue to pursue frivolous litigation.

*Second*, the pre-filing restriction extends to "any action that relates to the Aubry Revocable Family Trust or the administration of state courts or probate courts." The part of this order that bars the Ringgolds from litigating any action "relat[ing] to . . . the administration of state courts or probate

courts" is expansive.  The district court has not shown that this breadth is justified.

In the underlying case, the Ringgolds challenged the remuneration structure of California state courts.  But the pre-filing order goes well beyond remuneration issues; it covers all administrative matters regarding all state courts. Moreover, "administration" is an indefinite term open to broad interpretation, both by the district court and, prophylactically, by the Ringgolds.   This overbreadth presents "the danger" that it "will leave [litigants] uncertain as to what [they] may or may not do without" running afoul of the court's order, *Wood*, 705 F.2d at 1525, unduly chilling their right to free access to the courts.

This portion of the order could also extend to factual scenarios entirely unrelated to the dispute relating to the Trust.  Yet, the district court cites the Trust dispute as the root of the problem with the Ringgolds' litigation, characterizing the litigation as "essentially no more than an attempt to challenge the determination to remove Plaintiff Ringgold as temporary trustee of the Aubry Family Trust."

Sometimes a rancorous dispute leaves a person with a bitter taste that does not fade, no matter how many resources are expended and no matter how many years pass.  From our review of the case law discussing vexatious litigants, it is not uncommon for district courts to enjoin litigants from relitigating a *particular* case, such as when a litigant refuses to accept the finality of an adverse judgment. *See, e.g.*, *Safir*, 792 F.2d at 25; *Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1033 (9th Cir. 1985); *Wood*, 705 F.2d at 1525.  But in such cases, courts generally tailor the scope of a litigation restriction so as to restrain litigants from "reopen[ing]

litigation based on the facts and issues decided in" previous lawsuits. *Wood*, 705 F.2d at 1526; *see Safir*, 792 F.2d at 25; *Cook*, 775 F.2d at 1033. The underlying litigation here attempts to reopen a case that has reached final judgment. "A narrowly tailored injunction . . . would address only filings in that or related actions." *Cromer*, 390 F.3d at 819.

In sum, we see no reason why the district court could not have accomplished its goal of stemming the tide of the Ringgolds' litigation relating to the Aubry Family Trust without *also* enjoining the Ringgolds from bringing suits "relat[ing] to . . . the administration of state courts or probate courts." We therefore conclude that the injunction is overbroad.

## III.

We acknowledge that this case presents a host of challenges to courts and defendants alike. The pleadings are as far as can be from a model of clarity; there is duplication of state litigation that was itself extensive, and there is a multiplicity of claims. At some point, a federal pre-filing injunction may well be needed to protect judicial resources and the defendants from litigation related to this case. But the district court relied in large part on the Ringgolds' motions practice over the course of just two federal lawsuits, without considering less restrictive sanctions. In light of the constitutional concerns such pre-filing orders implicate, we hold this was error. The district court also erred by holding Ringgold's state litigation against Ringgold-Lockhart, without a record indicating that he participated in that litigation. Finally, there is an insufficiently close fit between the terms of the injunction and the problem it purports to address. For these reasons, we vacate the pre-filing order and

remand for further proceedings not inconsistent with this opinion.

**VACATED and REMANDED.**