FILED

DEC 07 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                    )   BAP No.   NC-14-1573-TaDJu
                                          )
JACQUELINE C. MELCHER,                    )   Bk. No.   01-53251
A/K/A Jacqueline Carlin,                  )
                                          )
               Debtor.                    )
_____           )
                                          )
JACQUELINE C. MELCHER,                    )
                                          )
               Appellant,                 )
                                          )
v.                                        )   **MEMORANDUM**[*]
                                          )
JOHN W. RICHARDSON, CHAPTER 7             )
TRUSTEE,                                  )
                                          )
               Appellee.                  )
_____           )

Argued and Submitted on October 23, 2015
at San Francisco, California

Filed – December 7, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Arthur S. Weissbrodt, Bankruptcy Judge, Presiding

_____

Appearances:    Jacqueline C. Melcher argued pro se; Charles
                Patrick Maher of McKenna Long & Aldridge LLP
                argued for John W. Richardson, Chapter 7 Trustee.

_____

Before:   TAYLOR, DUNN, and JURY, Bankruptcy Judges.

_____

[*]   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1(c)(2).

## INTRODUCTION

In the latest installment of this ongoing bankruptcy saga, chapter 7[1] debtor Jacqueline Melcher appeals from the bankruptcy court's pre-filing order. We AFFIRM the bankruptcy court in the main; but, in a narrow regard, we REVERSE and REMAND with instructions that the bankruptcy court strike certain language from the order.

## FACTS[2]

The Debtor is no stranger to the Panel; various issues in her now 14-year old bankruptcy case spawned two prior appeals. See Estate of Terrence P. Melcher v. Melcher (In re Melcher), 2006 WL 6810966 (9th Cir. BAP May 31, 2006) ("Melcher I"), aff'd, 300 F. App'x 455 (9th Cir. 2008); Richardson v. Melcher (In re Melcher), 2014 WL 1410235 (9th Cir. BAP Apr. 11, 2104) ("Melcher II"). Those memorandum decisions detail the factual background of the property division disputes between the Debtor and her deceased ex-husband and his probate estate and the Debtor's bankruptcy. There is a long complicated history, but we recount here only those facts most relevant to the present appeal.

At the heart of the Debtor's disputes is 3.75 acres of real property located on Martha's Vineyard and known as "Stonewall."

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion to take judicial notice of documents filed in the bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

During pre-petition divorce proceedings, a California state court ordered the Debtor to sell Stonewall and then split the proceeds with her ex-husband. In the face of this mandate, she filed a chapter 11 petition in June 2001, mere hours before a sale of Stonewall was to close.

In September 2008, the bankruptcy case was converted to chapter 7. As the Melcher II panel observed, the Debtor then began to "oppose[] most substantive actions of the Trustee to liquidate estate property." 2014 WL 1410235, at *2. Eventually, the Trustee requested, at least twice, an adjudication that the Debtor was a "vexatious litigant"; the bankruptcy court denied these requests.

Following a further series of protracted proceedings relating to his unsuccessful attempts to sell Stonewall, the Trustee made another attempt to obtain an order controlling the Debtor-driven litigation juggernaut. The Trustee asserted that the Debtor had:

> [S]teadily depleted her bankruptcy estate by (1) incurring during the Chapter 11 case $3.5 million in professional expenses, borrowing approximately the same sum secured by equity in real estate, and selling [a rental property], and (2) filing possibly 1,000 pleadings or more during the Chapter 7 case, [and] challenging the Trustee in almost every aspect of his administration of the bankruptcy estate.

Id. at *8. The bankruptcy court, again, denied his motion, and the Trustee appealed.

On appeal, the Melcher II panel determined that the Trustee's motion in effect requested a pre-filing restriction and that the bankruptcy court abused its discretion in denying this request. After determining that the standard articulated

3

in DeLong v. Hennessey, 912 F.2d 1144 (9th Cir. 1990), was applicable, it vacated and remanded. In short, DeLong required consideration of factors which were clearly satisfied based on the evidence in the record on appeal: the Debtor received sufficient notice and an opportunity to be heard in relation to the request for a pre-filing order, and an adequate record of the Debtor's abusive litigation activities over a lengthy period of time existed. The Melcher II panel observed that the Debtor's history of litigation and motive in pursuing litigation "were no longer subject to any dispute," and pointed to the Ninth Circuit's determination in another appeal that the Debtor's motive in the bankruptcy case was an abusive use of the bankruptcy process. Id. at *10-11. It also noted that the "record establishe[d] beyond any question that estate assets [had] been all but used up as a result of [the Debtor's] continued meritless litigation." 2014 WL 1410235, at *11. And, finally, it noted that no sanction short of a pre-filing restriction would curtail the Debtor's actions.

The Melcher II panel, thus, concluded that the bankruptcy court abused its discretion and clearly erred in denying the Trustee's motion. It vacated the order denying the motion and remanded the case back to the bankruptcy court with instructions that it make appropriate findings and that it implement an appropriate pre-filing order.

On remand, the bankruptcy court complied and issued the required order ("Pre-Filing Order"). Based on its findings, the bankruptcy court ordered that the Debtor was "enjoined from filing, in this bankruptcy case, and any related litigation with

4

the Trustee in any other federal or state court, any further pleadings without prior order of this Court." It then provided guidelines for any proposed future filings. The Debtor appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court abused its discretion in issuing the Pre-Filing Order.

**STANDARD OF REVIEW**

We review for an abuse of discretion a bankruptcy court's decision to issue pre-filing orders. See Ringgold–Lockhart v. Cnty. of Los Angeles, 761 F.3d 1057, 1062 (9th Cir. 2014). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

We may affirm on any basis supported by the record. Heers v. Parsons (In re Heers), 529 B.R. 734, 740 (9th Cir. BAP 2015).

**DISCUSSION**

**A.  Request for recusal**

As a preliminary matter, we consider the Debtor's motion seeking an order recusing Judge Dunn from this appeal based on

5

his membership in the Melcher II panel.[3]  She contends that the Melcher II panel, including Judge Dunn, was unduly harsh and simply "adopted the Trustee's unsupported litigious accusations against [her] and did not rule on the prudential standing issue on appeal."  Given his involvement in Melcher II, the Debtor believes that "Judge Dunn cannot hear the [appeal] in a fair and prudential manner."

The decision on a motion to recuse a judge rests with that particular judge.  See Bernard v. Coyne (In re Bernard), 31 F.3d 842, 843 (9th Cir. 1994).  As a result, Judge Dunn is appropriately involved in the recusal decision.

In relevant part, 28 U.S.C. § 455(a)-(b)(1) provides that a judge must "disqualify himself in any proceeding in which his impartiality might **reasonably** be questioned," such as "[w]here he has a personal bias or prejudice concerning a party . . . ."  Emphasis added.  Whether an appearance of impropriety exists is examined from an objective standpoint.  Blixseth v. Yellowstone Mountain Club, LLC, 742 F.3d 1215, 1219 (9th Cir. 2014) ("We gauge appearance by considering how the conduct would be viewed by a reasonable person, not someone hypersensitive or unduly suspicious.") (internal quotation marks and citation omitted).

Here, Judge Dunn's involvement in Melcher II is an insufficient basis to demonstrate impartiality, personal bias, or prejudice.  It is well established that "judicial rulings alone almost never constitute a valid basis for a bias or

---

[3]  Judge Jury was also a member of the Melcher II panel; however the Debtor does not seek her recusal from this appeal.

6

partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). That Judge Dunn sat on the Melcher II panel and gained information and insight in so doing is also an insufficient basis. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id.

Here, the Debtor fails to show that the Melcher II decision or any other facts reveal a "high degree of favoritism or antagonism" by Judge Dunn such that a fair judgment on this appeal is impossible. She takes particular umbrage at the following statement in the Melcher II decision: "she [the Debtor] will only sell the Stonewall property if she absolutely has to at the end of her life." The decision, however, refers to this statement only twice,[4] and in doing so is quoting the bankruptcy court's statement at a prior hearing. Judge Dunn's impartiality is not subject to reasonable question; we deny the Debtor's motion to recuse.

**B. Pre-filing Order**

On appeal, the Debtor reiterates the long litigation history involving Stonewall and then argues that the Trustee had no basis to declare her a vexatious litigant or to assassinate her character and reputation. She asserts that the Trustee's

---

[4] The Melcher I decision also refers to this statement, also quoting the bankruptcy court. Judge Dunn, however, did not sit on the Melcher I panel.

7

efforts are at their core an attempt to retroactively void a prior bankruptcy court order that permitted her to object to the Trustee's fees. To be clear, the sole issue before us on this appeal is whether the bankruptcy court abused its discretion in issuing the Pre-filing Order; the prudential standing issue that is the focus of much of the Debtor's argument on appeal is not before us. With one narrow exception, we conclude that there was no abuse of discretion.

A pre-filing restriction permits a federal court to "regulate the activities of [an] abusive litigant[] by imposing carefully tailored restrictions under . . . appropriate circumstances." Ringgold-Lockhart, 761 F.3d at 1061. This restriction, however, must be tempered by a litigant's right of access to the courts. Id.

In this respect, in order to impose pre-filing restrictions, a federal court must: (1) give the litigant notice and "an opportunity to oppose the order" prior to its entry; (2) compile an adequate record for appellate review, including "a listing of all the cases and motions that led the [] court to conclude that a vexatious litigant order was needed"; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered." Id. at 1062. The first two requirements are procedural in nature; the third and fourth, constitute "substantive considerations." Id.

The Melcher II panel concluded that the procedural considerations were satisfied. It instructed the bankruptcy court on remand to make appropriate findings in connection with

8

the substantive considerations. As a result, our review in this appeal is focused solely on those particular requirements.

In assessing the substantive considerations and determining "whether a party is a vexatious litigant and whether a pre-filing order will stop the vexatious litigation or if other sanctions are adequate," the court must consider the following five factors, known as the "Safir[5] factors":

(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;

(2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?;

(3) whether the litigant is represented by counsel;

(4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and

(5) whether other sanctions would be adequate to protect the courts and other parties.

Ringgold-Lockhart, 761 F.3d at 1062. The fifth factor is of particular importance. Id.

**1. Findings of Frivolousness or Harassment**

To determine whether litigation is frivolous, the court "must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims." Id. at

---

[5] See Safir v. U.S. Lines, Inc., 792 F.2d 19 (2d Cir. 1986).

9

1064 (internal quotation marks and citation omitted). The court may also "make an alternative finding that the litigant's filings show a pattern of harassment." Id. (internal quotation marks and citation omitted). Repetitious filings do not constitute harassment per se; rather, the court must determine whether the repetitious filings are done with "an intent to harass the defendant or the court." Id.

Here, the bankruptcy court identified the Safir factors and made the following findings thereunder:

First factor.
- Many of the Debtor's multiple pleadings and appeals were duplicative of matters already ruled upon and/or were frivolous and, in many instances, intended to block the normal bankruptcy process and inhibit the Trustee from administering the estate;
- The Debtor continued to re-hash arguments that the bankruptcy court had already ruled on; and
- The Debtor directed personal attacks against the Trustee and his counsel, and other parties in the case, including her ex-husband's estate and its counsel.

Second factor. The Debtor's numerous, largely duplicative filings were an abuse of the bankruptcy process.

Third factor. While the Debtor was unrepresented, her pro se status was not enough to overcome the fact that she continually failed to heed the bankruptcy court's efforts to instruct her as to proper procedures and to limit her arguments.

Fourth factor.
- The Debtor's conduct had caused needless expense and

10

unnecessary burden to other parties and to the bankruptcy court; and

• Many of the estate's assets had been expended as a result of the Debtor's continued and substantially meritless litigation, negatively impacting creditors and the Trustee.

Fifth factor. No sanction short of a pre-filing restriction would curtail the Debtor's duplicative or frivolous filings. As stated, the Debtor had not heeded the bankruptcy court's admonitions and surcharging a claimed homestead exemption was no longer viable in light of Law v. Siegel.

On this record, the bankruptcy court's findings were not clearly erroneous. As detailed in Melcher I and Melcher II, and the Ninth Circuit's unpublished decision affirming Melcher I in Melcher v. Estate of Terrence P. Melcher (In re Melcher), 300 F. App'x 455 (9th Cir. 2008), the Debtor has a long history of filing motions, papers, and appeals that are frivolous or evidence a pattern of harassment. The Debtor continues to advance arguments about Stonewall and the impropriety of the Trustee's and other parties' actions in relation to the property. See, e.g., In re Melcher, 300 F. App'x at 456 ("[T]he [BAP] has found that Jacqueline did not file the [Chapter 11] Plan in good faith but to keep Stonewall from being sold. It is time to bring this abuse of the bankruptcy process to an end. We affirm the judgment of the BAP."). The order to sell Stonewall was long ago adjudicated by the California state court, affirmed by the California court of appeal, and is now beyond dispute in the federal courts. See In re Marriage of Melcher, 2006 WL 119127, at *18 (Cal. Ct. App. Jan. 13, 2006)

11

(affirming the state court's order to sell Stonewall), reh'g denied, Feb. 9, 2006, review denied, Mar. 29, 2006.

There is no question that a once solvent estate is now insolvent due to the Debtor's protracted efforts to stall the sale of Stonewall and other real properties. Between the dates that the case was converted to chapter 7 (and the Trustee was appointed to the case) and the Debtor's filing of the notice of appeal in the present appeal, there have been over 2,000 docket entries in the bankruptcy case. Review of the docket in just the first year of the chapter 7 case reflects a number of motions, oppositions, and other papers filed by the Debtor - the bankruptcy court denied many of the Debtor's requests and objections contained therein. This pattern continued in subsequent years.

On this record, the bankruptcy court's findings clearly support a vexatious litigant finding and the imposition of a pre-filing restriction against her.

### 2. Narrowly tailored

In addition, a "pre-filing order[] must be narrowly tailored to the vexatious litigant's wrongful behavior." Ringgold-Lockhart, 761 F.3d at 1066 (internal quotation marks and citation omitted). In Ringgold-Lockhart, the Ninth Circuit determined that the pre-filing order was too broad where the order provided that the district court would first deem the action "meritorious." The Ninth Circuit determined that by adding this qualifier, "the district court added a screening criteria that is not narrowly tailored to the problem before it, and is in fact unworkable." Id.

12

Here, the Pre-Filing Order provides that the bankruptcy court "will permit the filing of the pleading only if it appears that the pleading has merit and is not duplicative of matters previously ruled upon by this Court and/or an appellate court, and has not been filed for the purposes of harassment or delay." With one exception, we conclude that the order is not overly broad.

First, the screening criteria are substantively narrowly tailored. The order refers to criteria as: "not duplicative of matters previously ruled upon by" the bankruptcy court or an appellate court, and which has not been filed for the purposes of harassment or delay; these are appropriate screening criteria. The order, however, contains one form of inappropriate criterion: that the bankruptcy court will determine whether the pleading "appears to have merit." As stated in Ringgold-Lockhart, this type of criterion is overly broad for a pre-filing restriction. See 761 F.3d at 1066. Nonetheless, the offensive language may be stricken from the order without issue.

Second, the Pre-Filing Order is appropriately limited to actions involving the Trustee. Again, the record clearly shows that the Debtor has fought the Trustee at every step both in and out of the bankruptcy court, thereby exhausting significant estate assets and prejudicing the interests of creditors and the Debtor alike. There is no danger that this portion of the order could extend to factual scenarios entirely unrelated to the Trustee in his capacity as the estate representative.

13

**CONCLUSION**

Based on the foregoing, we AFFIRM the bankruptcy court in part; but, we REVERSE and REMAND the order back to the bankruptcy court with instructions that it strike the "has merit and" phrase from page four, line 19 of the Pre-Filing Order.