**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.    CC-18-1321-FLS |
| SHMUEL ERDE, | Bk. No.    2:18-bk-20200-VZ |
| Debtor. | Adv. Pro.  2:18-ap-01294-VZ |
| SHMUEL ERDE, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| CAROLYN A. DYE, | |
| Appellee. | |

Submitted without Argument on May 23, 2019

Filed – June 6, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Vincent P. Zurzolo, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:    Appellant Shmuel Erde, pro se, on brief; Appellee Carolyn A. Dye, pro se, on brief.

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

This is a meritless appeal.

In 1984, chapter 11[1] debtor Shmuel Erde lost everything in a failed real estate project. In 2001, he began a litigation campaign that included at least six lawsuits in state and federal court, five bankruptcy cases, and nineteen adversary proceedings in the bankruptcy court. He has collected some money in two settlements but otherwise has been completely unsuccessful. All of his lawsuits have been dismissed with prejudice, his motions for post-judgment relief have been denied, and his appeals have failed. Courts have declared him a vexatious litigant at least four times. He has admitted that, for at least part of that period, he was suffering from a "severe condition of mental derangement."

This appeal arises from an adversary proceeding he commenced in his fifth bankruptcy case. He sued Carolyn A. Dye, the chapter 7 trustee in

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are the Federal Rules of Civil Procedure.

his third bankruptcy case, alleging that she improperly settled a claim that she had abandoned to him and failed to pay real property taxes. His claims suffer from numerous fatal defects: among other things, the trustee never settled the abandoned claim, and the taxing authority never filed a proof of claim for the unpaid real property taxes. The bankruptcy court dismissed his claims with prejudice and, like several other courts, declared him a vexatious litigant.

The bankruptcy court was correct. We AFFIRM.

## FACTUAL BACKGROUND[2]

### A.    Prepetition events

### 1.    The development deal

In 1983, Mr. Erde and his wife owned an aging building at a prime location, across the street from the University of California Los Angeles. To redevelop the property, Mr. Erde formed a partnership with Timothy Bodnar, who offered his experience developing real estate and his extensive financial contacts.

Prior to securing financing for the redevelopment project, Mr. Erde and Mr. Bodnar obtained a short-term interim loan, backed by a guarantor

---

[2] We borrow from the bankruptcy court's detailed ruling and its attached copies of earlier rulings discussing the extensive history of Mr. Erde's many cases. We also exercise our discretion to review the bankruptcy court's docket and the available public record in Mr. Erde's many cases. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

(Patrick Moriarty) and a deed of trust on the property, to pay off a maturing loan on the real property. Mr. Erde had to pledge the property, his personal residence, and several other investment properties as security for the interim loan.

Before Mr. Bodnar could arrange a long-term loan, the interim loan became due. Unfortunately, Mr. Moriarty was insolvent and could not repay the loan. As a result, the lender initiated foreclosure proceedings against the property, Mr. Erde's residence, and his investment properties.

Mr. Erde desperately tried to find alternative financing to pay off the interim loan. But in March 1984, Mr. Bodnar's attorney recorded a lis pendens against the property, which clouded the title and prevented Mr. Erde from securing alternative financing.

Mr. Bodnar then filed a chapter 11 bankruptcy petition on behalf of the partnership. Mr. Erde lost any chance of securing financing to pay off the interim loan; as a result, he lost everything. The bankruptcy court eventually dismissed the partnership's bankruptcy case.

### 2. Mr. Erde's litigation history

#### a. The 1984 and 1996 bankruptcy cases

Mr. Erde initiated personal bankruptcy cases in 1984 and 1996 in the Central District of California. The record does not explain the disposition of these cases, and the records of those cases are no longer readily available.

### b. State court litigation against Mr. Bodnar et al. (2001-2011)

Years later, Mr. Moriarty (who was then serving a federal prison sentence) told Mr. Erde that Mr. Bodnar had known all along that Mr. Moriarty was insolvent and could not honor his guarantee of the interim loan. Shortly thereafter, Mr. Erde began his unending string of lawsuits.

He first filed suit in April 2001 in the California state court against Mr. Bodnar, his attorneys, and others (the "2001 State Court Action"). The superior court dismissed the complaint with prejudice, ruling that Mr. Erde's claims were barred by the statute of limitations because he knew or should have known years earlier of the wrongful conduct alleged in the complaint. Mr. Erde appealed the superior court's ruling, but the court of appeal affirmed the dismissal in September 2002.

In February 2003, Mr. Erde filed a lawsuit nearly identical to the 2001 State Court Action against the same defendants (Mr. Bodnar, his attorneys, and others) in the federal district court. The district court dismissed Mr. Erde's complaint with prejudice, and Mr. Erde appealed the dismissal to the Ninth Circuit. The Ninth Circuit affirmed, holding that Mr. Erde was attempting to relitigate the same claims he brought against the same parties in a prior action.

Then, in October 2005, Mr. Erde filed in state court a complaint for

declaratory relief on behalf of the partnership against some of the same defendants. The superior court dismissed the lawsuit on the ground that Mr. Erde was a nonlawyer impermissibly representing the partnership.

In January 2006, Mr. Erde moved for a new trial in the 2001 State Court Action, even though the court of appeal had affirmed the dismissal in September 2002. The superior court denied the motion for a new trial.

In June 2006, Mr. Erde filed another complaint in state court against the same defendants (the "2006 State Court Action"). He essentially alleged the same causes of action that he raised previously. The superior court dismissed Mr. Erde's complaint with prejudice, holding that the issues had been litigated and finally determined. The court also noted that Mr. Erde asserted facts that were grossly inconsistent with his earlier complaints.

Mr. Erde again appealed, but the court of appeal affirmed the superior court in April 2008. He filed a motion for rehearing, which the appellate court denied.

Mr. Erde returned to the superior court and filed a motion for a new trial. The court noted that the motion was "not substantively viable" and denied it. Mr. Erde then filed a motion for reconsideration, which the court denied.

Mr. Erde then appealed the superior court's denial of his motion for reconsideration. The court of appeal dismissed the appeal and denied a subsequent petition for reconsideration and rehearing.

In September 2009, Mr. Erde attempted to resurrect the 2006 State Court Action by arguing that he had been insane ("severe condition of mental derangement") for the prior three decades and thus should be allowed to relitigate all issues. The superior court denied the motion and granted the defendants' motion to declare Mr. Erde a vexatious litigant.

Mr. Erde appealed the superior court's order, but the court of appeal affirmed. He requested that the appellate court "reverse denial of appeal" and petitioned to reopen the appeal, but the appellate court denied both requests. He then filed a resubmission of petition to reinstate appeal, which the court of appeal denied. He sent a letter personally to the presiding judge, and the court warned him not to contact it again.

Two years later, Mr. Erde returned to the superior court to file successively a motion to strike the vexatious litigant order, a motion for a new trial, a motion for declaratory relief, and a motion to void the vexatious litigant order. The superior court denied all requested relief.

### c. The Moriarty Judgments

In the meantime, Mr. Erde apparently obtained two state court judgments against Mr. Moriarty totaling $450,000 (the "Moriarty Judgments") arising from an unrelated business transaction.[3]

---

[3] According to the federal district court, in 1999, Mr. Erde loaned Mr. Moriarty money to support an energy project. Mr. Moriarty defaulted on the loan, which resulted in the two money judgments totaling $450,000. The record does not explain why

(continued...)

7

### d. The Singer state court lawsuit and settlement

In or around 2007, Mr. Erde and his wife were embroiled in two state court lawsuits against Russell Singer, Adobe Oil Development Corp., and Port Properties, Inc. (the "Singer Parties"). As far as we can tell, Mr. Erde was suing on contract claims that Mr. Moriarty had allegedly assigned to him. The parties eventually entered into a settlement agreement in which the Singer Parties agreed to pay Mr. Erde $100,000 in settlement of all claims. The release provided that the parties "agree not to pursue their claims contained in the [state court actions] in any legal action against each other or any other person or entity arising or pertaining to the events described in said [state court actions] . . . ."

### e. Mr. Erde's 2009 bankruptcy case and further proceedings against the Singer Parties

In 2009, Mr. Erde filed a personal chapter 11 petition (the "2009 Bankruptcy Case").

He also initiated sixteen adversary proceedings, three of which were against the Singer Parties. He asserted the same claims that he had settled with the Singer Parties in 2007 and for which he was paid $100,000. The Singer Parties filed a counterclaim against Mr. Erde, arguing that his

---

[3](...continued)
Mr. Erde lent substantial sums to Mr. Moriarty in 1999 even though Mr. Moriarty's insolvency in 1984 contributed to Mr. Erde's financial troubles.

adversary complaints breached the 2007 settlement agreement. The bankruptcy court granted the Singer Parties summary judgment and denied Mr. Erde's motion for a new trial.

The chapter 11 case was subsequently converted to chapter 7 in January 2011, and Ms. Dye was appointed chapter 7 trustee. This put Ms. Dye, as trustee, in control of Mr. Erde's claims against the Singer Parties. This gave the Singer Parties an opportunity: they had a chance to resolve Mr. Erde's claims against them without having to deal directly with Mr. Erde.

Ms. Dye reached a settlement agreement with the Singer Parties (the "Singer Settlement"), which called for the Singer Parties to pay the estate $5,000 in exchange for dismissal of the three adversary proceedings. The Singer Settlement provided:

> The Trustee and the Settling Counterclaimants shall execute a mutual and general release of claims . . . which, inter alia, shall release any and all claims which the Debtor has been asserting or could possibly assert against the Settling Counterclaimants, including any and all claims arising out of the Debtor's alleged status as a creditor or assignee from Defendant Moriarty.

Ms. Dye stated that she believed that Mr. Erde's claims against the Singer Parties were "substantially without merit" because the court had already granted the Singer Parties summary judgment.

The bankruptcy court approved the compromise. Mr. Erde did not

9

oppose it, and no one appealed the order approving the agreement. However, Mr. Erde later filed motions to amend the Singer Settlement, which the bankruptcy court denied. Then, Mr. Erde appealed those denials to the BAP, essentially arguing the exact same "jurisdictional" arguments that he raises here. The BAP affirmed.

### f.    The 2012 Erde-Dye Settlement

Mr. Erde filed an adversary proceeding against Ms. Dye for "Wrongful Taking of Property not Property of the Estate." Ms. Dye filed a separate complaint against him for breach of fiduciary duty, unjust enrichment, and breach of quasi-contract; in response, he asserted a counterclaim against her, alleging "Wrongful Interference in Counterclaimant's Property." His claims related to Ms. Dye's allegedly wrongful conduct in handling the Singer Settlement and Moriarty Judgments. He alleged that she had abandoned the Moriarty Judgments to him,[4] yet the Singer Settlement released any claims that he might have against the Singer Parties in connection with the Moriarty Judgments.

In 2012, Ms. Dye and Mr. Erde settled both adversary proceedings (the "Erde-Dye Settlement"). Mr. Erde received $10,000 from the bankruptcy estate, and the parties agreed to dismiss the adversary complaints and other pending cases related to the Singer Settlement. No

---

[4] The abandonment of the Moriarty Judgments is discussed in subsection h below.

one appealed the settlement order.

### g. Sale of Mr. Erde's property and payment of real property taxes

In November 2011, Ms. Dye sought to sell Mr. Erde's real property located in Beverly Hills, California for $2,150,000. Her motion proposed payment of estimated outstanding county property tax liens for the years 2010-2011 ($32,790.98) and 2011-2012 ($14,040.97) and stated that "the Property is being sold free and clear of liens, with all liens to attach to proceeds . . . ." The court approved the sale over Mr. Erde's objection. The sale order provided that:

> 3. The sale shall be free and clear of all liens, encumbrances, claims, and other interests of any kind whatsoever, . . . except for easements, covenants, and taxes not yet due and owing which the Buyer takes subject to [the trustee's payment of tax liens.]

The sale closed on or around December 20, 2011, and Ms. Dye later reported that she had paid the property taxes for the 2010-2011 tax year and the first half of the 2011-2012 tax year.

### h. Mr. Erde's bankruptcy court proceedings against Mr. Moriarty

In his 2009 Bankruptcy Case, Mr. Erde also initiated an adversary proceeding against Mr. Moriarty. He claimed, among other things, that Mr. Moriarty had fraudulently transferred assets to the Singer Parties.

The bankruptcy court held that Mr. Erde was entitled to enforce the state court judgments against Mr. Moriarty totaling $450,000 and to litigate the claim that Mr. Moriarty had fraudulently transferred his assets to the Singer Parties.[5] The court did not enter findings of fact or conclusions of law.

In January 2011, Mr. Moriarty and his wife filed for chapter 7 bankruptcy protection. At that time, the Moriarty Judgments were property of the estate in Mr. Erde's 2009 Bankruptcy Case. They came under Ms. Dye's control when Mr. Erde's case was converted to chapter 7.

In order to regain control of the Moriarty Judgments, Mr. Erde filed a motion (in Mr. Erde's 2009 Bankruptcy Case) to compel the trustee to abandon the Moriarty Judgments. The bankruptcy court granted the motion in part and ordered Ms. Dye to file either a complaint objecting to the dischargeability of the Moriarty Judgments or a motion for an extension of time to object to their dischargeability in Mr. Moriarty's bankruptcy case. If she did neither by April 21, 2011, the court would deem the Moriarty Judgments abandoned to Mr. Erde. Ms. Dye opted to do neither of these things.

Mr. Erde then initiated an adversary proceeding in Mr. Moriarty's

---

[5] The bankruptcy court held that Mr. Erde was entitled to pursue those claims but did not enter judgment on the claims, probably because the Singer Parties were not parties to that adversary proceeding.

Bankruptcy Case, seeking a determination that the Moriarty Judgments were nondischargeable. He argued that the court had already held, in his 2009 Bankruptcy Case, that the judgments were nondischargeable. But following a trial, the bankruptcy court ruled that the judgments were dischargeable. The court stated that the earlier judgment did not establish that Mr. Moriarty had committed fraud or a willful and malicious injury because it had no findings that Mr. Moriarty did not intend to repay the loans or intended to cause injury.

Mr. Erde unsuccessfully moved for a new trial. He then appealed to the district court, but the district court affirmed.

### i. The 2012 motion to reopen the partnership's 1984 bankruptcy case and appeal

In October 2012, Mr. Erde filed a motion in the bankruptcy court to reopen the partnership's 1984 bankruptcy case and associated adversary proceedings against Mr. Bodnar and his attorneys. The bankruptcy court denied the motion, telling Mr. Erde that the issues in his case had been repeatedly litigated in state court.

Mr. Erde filed a motion to alter or amend the 1984 order dismissing the partnership's bankruptcy case, which the court denied. He then appealed the court's decision, but the district court affirmed and denied Mr. Erde's subsequent motion for reconsideration.

Mr. Erde filed a request for leave to file a motion for sanctions against

13

Mr. Bodnar's attorneys. The district court denied his request. Mr. Erde filed another motion to amend the final judgment and a request to refer the matter to the United States Attorney for criminal investigation. Shortly thereafter, Mr. Bodnar's attorneys filed a motion to declare Mr. Erde a vexatious litigant.

The district court denied Mr. Erde's motions and declared him a vexatious litigant. It required him to seek permission before filing any further documents related to his dispute with Mr. Bodnar's attorneys over the development deal.

### j. The 2014 bankruptcy case

Mr. Erde filed a chapter 13 petition in June 2014. He voluntarily dismissed it a few weeks later.

## B. Mr. Erde's 2018 bankruptcy case and the present adversary proceeding

Mr. Erde initiated his fifth bankruptcy case in 2018 (the "2018 Bankruptcy Case") by filing a chapter 11 petition pro se.

Mr. Erde commenced an adversary proceeding against Ms. Dye, arguing that she improperly released the Moriarty Judgments in the Singer Settlement during the 2009 Bankruptcy Case after they had been abandoned to him. He requested that the bankruptcy court invalidate the Singer Settlement and require Ms. Dye to pay him $600,000 plus interest, the alleged face value of the Moriarty Judgments.

Mr. Erde filed a first amended complaint containing an additional claim that Ms. Dye had failed to pay property taxes on Mr. Erde's Beverly Hills real property, which resulted in the Los Angeles County Treasurer & Tax Collector filing a $6,556.69 claim in the 2018 Bankruptcy Case for unpaid taxes in the 2011-2012 fiscal year.

### 1.     The motion to dismiss

Ms. Dye filed a motion to dismiss the adversary complaint with prejudice under Civil Rule 12(b)(6) ("Motion to Dismiss"). She contended that the complaint was frivolous and intended to harass her.

Ms. Dye argued that Mr. Erde impermissibly commenced the adversary proceeding without permission of the court and that she had immunity for all of her actions in her capacity as a chapter 7 trustee. *See Barton v. Barbour*, 104 U.S. 126 (1881); *Bennett v. Williams*, 892 F.2d 822 (9th Cir. 1989).

She contended that Mr. Erde was merely seeking to relitigate claims that were previously resolved in the Erde-Dye Settlement. She argued that she did not settle the Moriarty Judgments: "all the Trustee settled with Singer were claims the estate could have asserted against Russell Singer in his capacity as an alleged assignee of Moriarty." She noted that the bankruptcy court in Mr. Moriarty's case had ruled that Mr. Erde's judgments against Mr. Moriarty were dischargeable, so the judgments were worthless regardless of the Singer Settlement.

15

With regard to the property tax claim, Ms. Dye argued that the property tax was assessed three years after the 2009 Bankruptcy Case was filed, she had no notice of the outstanding tax, and the county did not file a proof of claim in the 2009 Bankruptcy Case.

She further argued that all of Mr. Erde's claims were barred by the statute of limitations.

### 2. The vexatious litigant motion

Ms. Dye also filed a motion for an award of sanctions under Civil Rule 11 and to declare Mr. Erde a vexatious litigant ("Vexatious Litigant Motion"). She pointed out that Mr. Erde had been declared a vexatious litigant previously and that his claims were meritless. Additionally, she argued that Mr. Erde had released all claims against Ms. Dye pursuant to the Erde-Dye Settlement, for which he received $10,000. The order approving that settlement had been "final" for over eight years.

Ms. Dye requested that the bankruptcy court sanction Mr. Erde in the amount of $12,771.

### 3. Mr. Erde's opposition to the Motion to Dismiss and Vexatious Litigant Motion

Mr. Erde opposed both motions. He essentially repeated his argument that Ms. Dye "did not have jurisdiction to sell the Moriarty Judgments **after** they were abandoned by order of the Bankruptcy Court."

He contended that any prior vexatious litigant ruling was irrelevant,

16

because none of them concerned cases involving Ms. Dye.

He stated that he was not a vexatious litigant, arguing that he cannot be held in contempt for disobeying a "void order issued by a court without jurisdiction." He also argued that his claims were meritorious.

Finally, Mr. Erde repeated his assertion that Ms. Dye failed to pay property taxes on his Beverly Hills real property, which was under her control after the 2009 Bankruptcy Case was converted to chapter 7.

### 4. The bankruptcy court's ruling

The bankruptcy court issued separate orders granting the Motion to Dismiss ("Dismissal Order") and the Vexatious Litigant Motion ("Vexatious Litigant Order") and issued accompanying findings of fact and conclusions of law ("Findings and Conclusions").

Regarding the Motion to Dismiss, the bankruptcy court rejected Ms. Dye's procedural argument that Mr. Erde needed to seek leave of court before filing suit against her, because such leave is only required to sue a trustee in a forum other than the one in which the trustee was appointed. Similarly, it also rejected Ms. Dye's position that the court should dismiss the complaint because Mr. Erde was previously declared a vexatious litigant when prosecuting the same claims; those earlier cases did not involve Ms. Dye or the bankruptcy court.

The court still found numerous reasons to dismiss the adversary proceeding. It held that the original complaint failed to comply with the

pleading requirements of Civil Rule 8(a). Additionally, the court agreed with Ms. Dye that the original complaint and amended complaint failed to state a claim for relief under Civil Rule 12(b)(6). It held that the claims in the original complaint were the same as those litigated and settled in the 2009 Bankruptcy Case, such that they were barred by issue and claim preclusion. The court also held that Ms. Dye had immunity from liability under the circumstances, because she did not violate her duties and did not take any action that was not approved by the court.

The court ruled that the claims were barred by the statute of limitations. It agreed with Ms. Dye that the alleged wrongful acts occurred in 2011 (or, at the latest, when the 2009 Bankruptcy Case was closed in 2013), so Mr. Erde's claims in 2018 were beyond the four-year statute of limitations.

Regarding the tax claim, the bankruptcy court noted that Mr. Erde did not dispute Ms. Dye's argument that she had no knowledge of the 2011-2012 property tax claim. It also noted that, under the sale order, it was the buyer's obligation to pay taxes not yet due and owing.

The court next addressed the Vexatious Litigant Motion. It found that Ms. Dye had established the requisite elements to declare Mr. Erde a vexatious litigant under *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007), because: (1) Ms. Dye filed a motion, and Mr. Erde had an opportunity to be heard; (2) the records of Mr. Erde's actions in the

18

superior court, district court, and bankruptcy court show that his activities were numerous and abusive and that his current actions appear to follow the same pattern; (3) his actions were frivolous or harassing; and (4) the vexatious litigant restrictions were tailored to fit the parties and claims. The court held that the third prong was satisfied under *Safir v. U.S. Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986), because: (a) Mr. Erde had demonstrated a history of duplicative and vexatious lawsuits; (b) he had no objective, good-faith expectation of prevailing against Ms. Dye because his claims were barred by issue and claim preclusion; and (c) his actions forced Ms. Dye to expend time and money defending herself, when she could have been serving clients; and (d) other sanctions were previously ineffective at deterring Mr. Erde's vexatious conduct.

The Vexatious Litigant Order held that Mr. Erde was a vexatious litigant and prohibited him from filing any claim against Ms. Dye in any bankruptcy court. It also awarded Ms. Dye monetary sanctions in her requested amount of $12,771. Half of the amount ($6,385.50) was due immediately, while the second half was due only if Mr. Erde violated the rest of the order.[6]

---

[6] Ms. Dye represents that Mr. Erde has not paid the sanction award. Subsequently, the bankruptcy court dismissed Mr. Erde's 2018 Bankruptcy Case and declared him a vexatious litigant as to all prior parties in all bankruptcy cases. Mr. Erde remains undeterred. He has since filed a motion for declaratory judgment, two motions to disqualify Judge Zurzolo, an objection to the court's evidence, a request to stay entry

(continued...)

### 5.     The notice of appeal

Mr. Erde timely filed a notice of appeal. He stated that he was appealing the "Order granting Defendant's Motion to Dismiss the Complaint against her, and granting Defendant's Motion declaring Defendant a Vexatious Litigant." However, he attached to the notice of appeal only the Vexatious Litigant Order. On the same day, he filed another document listing sixteen issues on appeal that largely concerned the court's jurisdiction over abandoned estate property and the trustee's liability for malfeasance.

Two months later, prior to filing his opening brief on appeal, he filed with the BAP a "Notice of Errata." He stated that, due to "inadvertent error," he did not attach the Dismissal Order or the Findings and Conclusions to the original notice of appeal. He attached all three documents to the "Notice of Errata."

### JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1).

Ms. Dye argues that Mr. Erde's notice of appeal was faulty because he failed to attach a copy of the Dismissal Order. Therefore, she argues that we have jurisdiction to review only the Vexatious Litigant Order, not the

---

[6](...continued)
of order, and a motion to alter or amend judgment.

Dismissal Order. We disagree.

When considering a defective notice of appeal, the Supreme Court and Ninth Circuit have cautioned "that the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits." *Le v. Astrue*, 558 F.3d 1019, 1022 (9th Cir. 2009) (citations omitted). Even if an order "does not appear on the face of the notice of appeal," we are to consider: "(1) whether the intent to appeal a specific judgment can be fairly inferred and (2) whether the appellee was prejudiced by the mistake." *Id.* at 1022-23 (quoting *Lolli v. Cty. of Orange*, 351 F.3d 410, 414 (9th Cir. 2003)). "In determining whether intent and prejudice are present, we consider first, whether the affected party had notice of the issue on appeal; and, second, whether the affected party had an opportunity to fully brief the issue." *Id.* at 1023 (quoting *Meehan v. Cty. of L.A.*, 856 F.2d 102, 105 (9th Cir. 1988) (quotation marks omitted)).

Ms. Dye contends that Mr. Erde's failure to attach a copy of the Dismissal Order to the notice of appeal means that we cannot consider any appeal from that order. She cites multiple cases for the general proposition that Mr. Erde needed to timely file a notice of appeal and that failure to do so divests this Panel of jurisdiction. But Ms. Dye is incorrect when she claims that "[t]he Dismissal Order was not cited, or referenced in any way or attached" to the notice of appeal. While it is true that Mr. Erde did not

attach a copy of the Dismissal Order, his timely notice of appeal clearly stated that he was appealing from the "Order granting Defendant's Motion to Dismiss the Complaint against her, and granting Defendant's Motion declaring Defendant a Vexatious Litigant." His intent to appeal was apparent from the face of the notice of appeal. Moreover, his statement of issues on appeal, filed the same day, included numerous issues relating to the Dismissal Order. It is obvious that he intended to appeal from the Dismissal Order. Mr. Erde's notice of appeal was sufficient to inform Ms. Dye of the orders that Mr. Erde wished to appeal.

Furthermore, although we do not condone Mr. Erde's "errata," he submitted the Dismissal Order before he filed his opening brief. Ms. Dye knew of the issues on appeal well before she filed her answering brief, and she was not prejudiced by Mr. Erde's initial failure to attach the Dismissal Order to the notice of appeal.

Accordingly, we have jurisdiction under 28 U.S.C. § 158 to consider both the Dismissal Order and the Vexatious Litigant Order.

## ISSUE

Whether the bankruptcy court erred in dismissing Mr. Erde's adversary proceeding and declaring him a vexatious litigant.

## STANDARDS OF REVIEW

"We review de novo the bankruptcy court's order dismissing a complaint under Civil Rule 12(b)(6)." *Tracht Gut, LLC v. Cty. of L.A.*

22

*Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 503 B.R. 804, 810 (9th Cir. BAP 2014), *aff'd*, 836 F.3d 1146 (9th Cir. 2016) (citing *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We review for an abuse of discretion the bankruptcy court's decision to declare a party a vexatious litigant. *Ringgold-Lockhart v. Cty. of L.A.*, 761 F.3d 1057, 1062 (9th Cir. 2014) (citing *Molski*, 500 F.3d at 1056). We also review the bankruptcy court's imposition of sanctions for an abuse of discretion. *Miller v. Cardinale (In re Deville)*, 280 B.R. 483, 492 (9th Cir. BAP 2002), *aff'd*, 361 F.3d 539 (9th Cir. 2004) (citing *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 283 (9th Cir. 1996)).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. *Id.* Then, we review the bankruptcy court's factual findings for clear error. *Id.* at 1262. We must affirm the bankruptcy court's factual findings unless we conclude that they are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.*

23

**DISCUSSION**

**A.    The bankruptcy court did not err in dismissing the adversary proceeding.**

Mr. Erde's primary argument on appeal is that the bankruptcy court lacked jurisdiction in the 2009 Bankruptcy Case to approve a compromise of the Moriarty Judgments, so it erred when it dismissed his adversary proceeding in the 2018 Bankruptcy Case. We reject all of his contentions.

Civil Rule 12(b)(6), made applicable in adversary proceedings by Rule 7012, provides for dismissal if the plaintiff fails "to state a claim upon which relief can be granted[.]" Civil Rule 12(b)(6). The court "must also construe the complaint in the light most favorable to the plaintiff, and must accept all well-pleaded factual allegations as true." *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 573 (9th Cir. BAP 2011) (citations omitted).

"A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (citations omitted). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)).

**1.    Mr. Erde's argument that the bankruptcy court "lacked jurisdiction" to approve the Singer Settlement is meritless.**

The gist of Mr. Erde's main argument on appeal is that, once Ms. Dye

24

abandoned the Moriarty Judgments to him in the 2009 Bankruptcy Case, they were no longer a part of his bankruptcy estate, so Ms. Dye could not administer them and the court lacked jurisdiction over them; therefore, the Singer Settlement improperly released the Moriarty Judgment because the court lacked jurisdiction to approve the settlement. This argument fails.

### a. These exact issues have been finally decided.

The bankruptcy court held that the claims in the original complaint were fully litigated during earlier adversary proceedings, such that they are barred by claim and issue preclusion. The bankruptcy court is correct.

Under California law, claim preclusion "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002). Claim preclusion requires that: (1) the second lawsuit must involve the same "cause of action" as the first lawsuit; (2) the first lawsuit must have resulted in a final judgment on the merits; and (3) the party to be precluded must have been a party, or in privity with a party, to the first lawsuit. *See San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2008). Courts may inquire into fairness and public policy before applying the doctrine of claim preclusion, but that inquiry is not mandatory. *See Roberts v. Andrews Family Revocable Tr. (In re Andrews)*, BAP No. EC–13–1385–JuTaKu, 2014 WL 2547808, at *8 (9th Cir. BAP June 5, 2014), *aff'd*, 668 F. App'x 757 (9th Cir. 2016) (citing *Kopp v. Fair*

25

*Political Practices Comm'n*, 11 Cal. 4th 607, 620-22 (1995)).

We agree with the bankruptcy court that the claims alleged in the original complaint are the same as those that Mr. Erde raised in the 2011 adversary proceedings (which he filed in the 2009 Bankruptcy Case). His claims were fully adjudicated when the bankruptcy court dismissed the claims with prejudice pursuant to the Erde-Dye Settlement; Mr. Erde agreed to the settlement with Ms. Dye and, indeed, received $10,000. It would be inequitable to allow Mr. Erde to attempt to relitigate the same claims against the same party.[7]

**b.      The statute of limitations has run on Mr. Erde's claims.**

The bankruptcy court was also correct in holding that the statute of limitations had run on Mr. Erde's claims. California has a four-year statute of limitations for breach of fiduciary duty. *See* Cal. Civ. P. Code § 343; *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1010 (N.D. Cal. 2015) ("[T]he statute of limitations for breach of fiduciary duty is three years where the gravamen of the claim is fraud; otherwise it is four years under the catchall provision of California's Civil Procedure Code Section 343(a)."). Mr. Erde agreed to the Erde-Dye Settlement, which the bankruptcy court approved

---

[7] In addition to issue and claim preclusion, the release and settlement doctrine is an independently sufficient basis to affirm. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 848 (9th Cir. 2004) (holding that settlement agreement barred later claims covered by the release in the settlement agreement where there was no indication of "fraud, duress, failure of informed consent, or any other basis that would render [the settlement agreement] invalid").

in April 2012. Mr. Erde did not appeal the order approving the settlement, and the case closed in 2013. He filed his 2018 Bankruptcy Case more than four years after the Singer Settlement in 2011, the Erde-Dye Settlement in 2012, and the closing of the 2009 Bankruptcy Case in 2013. *See* § 108(a)(2) (extending any unexpired statutes of limitation until "two years after the order for relief"). Thus, his claims were barred by the statute of limitations.

### c. Mr. Erde's claims are substantively untenable.

We also agree with the bankruptcy court that Mr. Erde's arguments lack any substantive merit, because his premise is flawed: the Singer Settlement did not dispose of the Moriarty Judgments. The Singer Settlement only provided that the Singer Parties and the chapter 7 trustee "shall release any and all claims which the Debtor has been asserting or could possibly assert against the [Singer Parties], including any and all claims arising out of the Debtor's alleged status as a creditor or assignee from Defendant Moriarty." In other words, Mr. Erde could no longer assert claims against the **Singer Parties**, including those that may have arisen out of the Moriarty Judgments. Contrary to Mr. Erde's assertions, it did **not** "dispose of" or "release" the **Moriarty Judgments**, under which Mr. Moriarty (not the Singer Parties) was liable.

In any event, as Ms. Dye points out, the Moriarty Judgments were of no value, because the bankruptcy court in Mr. Moriarty's bankruptcy case had determined that they were discharged. Mr. Erde does not challenge

27

this fact.[8]

### 2. Mr. Erde's argument that Ms. Dye failed to pay property taxes or otherwise violated her duties as trustee is meritless.

Mr. Erde's assertion in the first amended complaint, that Ms. Dye failed to pay the property taxes on his Beverly Hills property during the 2009 Bankruptcy Case, is equally unpersuasive.

Mr. Erde implicitly concedes that the county did not file a proof of claim for the taxes in the 2009 Bankruptcy Case or raise the issue during the sales process and that Ms. Dye, the chapter 7 trustee, did not have any knowledge of such a claim. He also does not dispute that the bankruptcy court approved of the trustee's final accounting and that he did not raise any objection regarding the taxes. He fails to address the bankruptcy court's further point that the sale of the Beverly Hills property required that the buyer would be responsible for all taxes not yet due and owing.

Additionally, Mr. Erde fails to dispute the court's holding that all of Ms. Dye's acts were approved by the bankruptcy court, so she is entitled to immunity from liability. *See Read v. Duck (In re Jacksen)*, 105 B.R. 542, 545 (9th Cir. BAP 1989) ("a trustee or an official acting under the authority of the bankruptcy judge is entitled to derived judicial immunity because he is

---

[8] We need not address the bankruptcy court's ruling that Mr. Erde's complaints did not comply with Civil Rule 8.

performing an integral part of the judicial process").[9]

## B. The bankruptcy court did not err in determining that Mr. Erde was a vexatious litigant and imposing sanctions.

Mr. Erde next contends that the bankruptcy court erred in labeling him a vexatious litigant because his claims were meritorious. We again disagree.

The Ninth Circuit has held that, before courts can declare a litigant vexatious and impose pre-filing restrictions, they must:

> (1) give litigants notice and "an opportunity to oppose the order before it [is] entered"; (2) compile an adequate record for appellate review, including "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed"; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered."

*Ringgold-Lockhart*, 761 F.3d at 1062 (quoting *De Long v. Hennessey*, 912 F.2d 1144, 1147-48 (9th Cir. 1990)). In evaluating the final two factors, courts must consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether

---

[9] Mr. Erde also argues that Ms. Dye has a history of violating her duties as a chapter 7 trustee. These arguments are irrelevant, as none of the alleged instances have any bearing on the present case.

the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* (quoting *Molski*, 500 F.3d at 1058).

Mr. Erde only challenges the bankruptcy court's Vexatious Litigant Order on the basis that his claims against Ms. Dye are meritorious (i.e., one sub-factor of the third factor). He claims that he "has been motivated by his good faith belief that his claims are meritorious" and that "Dye has acted without jurisdiction." As we discuss above, we agree with the bankruptcy court that his arguments are all unavailing and meritless.

He does not take issue with any of the bankruptcy court's other findings or the reasonableness of the filing restrictions or monetary sanctions (which he has not paid). Accordingly, we find no error in the bankruptcy court's determination that Mr. Erde is a vexatious litigant or its imposition of filing restrictions and monetary sanctions.

## CONCLUSION

The bankruptcy court did not err in dismissing the adversary proceeding and declaring Mr. Erde to be a vexatious litigant. Accordingly, we AFFIRM both the Dismissal Order and the Vexatious Litigant Order.