

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ARTEM KOSHKALDA,<br>        Debtor. | BAP No. NC-20-1050-SGB<br>BAP No. NC-20-1051-SGB<br>(Related Appeals) |
| ARTEM KOSHKALDA,<br>        Appellant,<br>v.<br>E. LYNN SCHOENMANN, Chapter 7<br>Trustee; SEIKO EPSON CORPORATION;<br>EPSON AMERICA, INC.,<br>        Appellees. | Bk. No. 18-30016<br><br>Adv. No. 18-03020<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

APPEARANCES:

Appellant Artem Koshkalda argued pro se; Henry S. David of The David Firm argued for appellees Seiko Epson Corporation and Epson America, Inc.; Jack Praetzellis of Fox Rothschild LLP argued for appellee E. Lynn Schoenmann, Chapter 7 Trustee

Before: SPRAKER, GAN, and BRAND, Bankruptcy Judges.

SPRAKER, Bankruptcy Judge:

**INTRODUCTION**

Chapter 7[1] debtor Artem Koshkalda appeals the bankruptcy court's orders determining that he is a vexatious litigant and imposing pre-filing restrictions against him in his main bankruptcy and in an adversary proceeding challenging his discharge. Though we find no error in the bankruptcy court's findings that Koshkalda was a vexatious litigant, we must vacate the pre-filing order in the main case to address a few defects. Additionally, we must reverse the vexatious litigant order entered in the adversary proceeding. By the time the bankruptcy court entered this vexatious litigant order, it already had disposed of the adversary proceeding by entering summary judgment against Koshkalda. There was insufficient *postjudgment* evidence of an ongoing need for pre-filing restrictions to control his future filings in the adversary proceeding. Accordingly, we REVERSE the adversary pre-filing order, VACATE the case pre-filing order, and REMAND, so the bankruptcy court can make the necessary changes to the case pre-filing order.

**FACTS**

**A. Pre-bankruptcy litigation.**

Prior to his bankruptcy filing, appellee Seiko Epson Corporation and

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Epson America, Inc. (jointly, "Epson") sued Koshkalda and his affiliates in the United States District Court for the District of Nevada for trademark infringement, trademark counterfeiting, unfair competition, and false advertising ("Infringement Action"). The district court eventually entered a series of injunctions and orders prohibiting Koshkalda and the other defendants from engaging in wrongful conduct and restricting their ability to use or transfer assets. As a result of Koshkalda's noncompliance with these orders and severe and repeated discovery abuses, the district court ultimately struck his answer and entered a default judgment for $12 million in favor of Epson on January 16, 2018.

**B.     Koshkalda's chapter 11 case filing and conversion to chapter 7.**

On January 5, 2018, after the district court entered default against Koshkalda but before entry of the default judgment, Koshkalda filed a voluntary chapter 11 petition. Koshkalda was represented by counsel at the commencement of his bankruptcy.

Within days of the bankruptcy filing, Epson moved to dismiss the case, asserting that it had been filed in bad faith in furtherance of Koshkalda's efforts to thwart the district court litigation. The bankruptcy court declined to dismiss the case but instead ordered it converted to chapter 7. Appellee E. Lynn Schoenmann was appointed to serve as chapter 7 trustee. Schoenmann then employed Fox Rothschild, LLP as counsel for the chapter 7 estate. In the declaration submitted in support of

3

Fox Rothschild's employment, the law firm disclosed that Epson was a current client in unrelated matters. The application to employ Fox Rothschild and the declaration in support were mailed to Koshkalda and his counsel. The court approved the estate's employment of Fox Rothschild as counsel for the estate without objection.

In June 2018, Epson obtained an order annulling the automatic stay. This order retroactively validated the district court's entry of the $12 million default judgment and also permitted Koshkalda to proceed with his appeal from that judgment. The Ninth Circuit affirmed that judgment in December 2019.

During the course of the case, Schoenmann liquidated over $5 million in estate assets, often over Koshkalda's objections. After the costs of sale, the payoff of secured claims, and the payment of administrative expenses, it is unclear to what extent, if any, there will be funds left over for a distribution to Koshkalda's unsecured creditors. Much of the administrative expenses incurred can be attributed to Koshkalda's litigation conduct.

## C. The Epson Adversary Proceeding.

In May 2018, Epson commenced an adversary proceeding objecting to Koshkalda's discharge under § 727 and seeking to except the judgment debt from discharge under § 523 ("Epson Adversary Proceeding"). The bankruptcy court later stayed some of the § 523 claims pending resolution

of Epson's § 727(a) claims and its claims under § 523 based on fraud.[2]

In September 2019, the bankruptcy court granted Epson summary judgment on its claims under §§ 727(a)(2)(A), (a)(3), and (a)(7). The bankruptcy court then dismissed as moot the rest of the claims and entered final judgment in Epson's favor.

For our purposes, the most salient feature of the Epson Adversary Proceeding was not the judgment itself. Rather, it was the amount of motion practice and discovery disputes it generated. As the bankruptcy court later observed in its order determining Koshkalda to be a vexatious litigant ("Vexatious Litigant Ruling"):

> The court entered orders concerning twelve discovery disputes initiated through the court's informal discovery procedures, every single one of which arose from either Mr. Koshkalda's unreasonable demands or his obstinate, baseless refusal to cooperate with Seiko Epson's legitimate discovery requests. At one point, the court found Mr. Koshkalda in contempt and imposed issue and monetary sanctions against him for abusive discovery practices.
>
> In addition to the dozen discovery disputes attributable to Mr. Koshkalda's belligerence, he also filed eighteen motions in the AVP, all of which the court denied. All but two of these motions were entirely lacking in merit. The court ruled on many of them without oral argument, and a few without even requiring an opposition.

---

[2] Schoenmann also commenced a denial of discharge adversary proceeding against Koshkalda. (Adv. No. 18-03059.) This adversary proceeding also was stayed pending the outcome of the Epson Adversary Proceeding.

**D.  The withdrawal of Koshkalda's counsel and the resulting matters filed by Koshalda.**

On September 26, 2018, the bankruptcy court granted the motion to withdraw filed by Koshkalda's counsel. Unrestrained by counsel, Koshkalda mounted continuous and repetitive challenges to Schoenmann's administration of the estate. Koshkalda filed a series of motions to compel her to abandon estate property back to him, even though some of the property was subject to ongoing sale or settlement efforts.

In addition, Koshkalda began a concerted effort to remove Schoenmann and her counsel for their failure to litigate against Epson and its claim. As part of these efforts, Koshkalda objected to the continued employment and compensation of both the trustee and her counsel. On a number of occasions, his arguments in these objections overlapped with positions he took in the Epson Adversary Proceeding as part of his motions and discovery practice. Koshkalda's actions in the main case and the Epson Adversary Proceeding largely took place between October 2018 and January 2020.

**E.  Schoenmann's motion for a pre-filing order and Epson's Joinder.**

On December 26, 2019, Koshkalda filed his motion to vacate the court's order retaining Fox Rothschild, seeking to set aside the law firm's employment by the estate. Koshkalda filed this motion roughly a week after the court denied his prior motion to disqualify Fox Rothschild as the

trustee's counsel. Together with her opposition to the motion to vacate, Schoenmann requested that the court enter "a pre-filing order . . . requiring that he obtain court-permission before being permitted to file any further papers in this bankruptcy case." To support her request, Schoenmann listed eleven separate motions Koshkalda filed in the bankruptcy case. She urged that each of these motions demonstrated his vexatious conduct, as well as those he filed in the Epson Adversary Proceeding. She further pointed out that both the bankruptcy court and the district court already had imposed other forms of sanctions against Koshkalda but that these lesser sanctions had not proven successful in curbing Koshkalda's vexatious conduct. The next day, the bankruptcy court entered an order denying the motion to vacate and set the vexatious litigant motion for hearing in February 2020.

A few days after entry of the court's scheduling order, Epson joined Schoenmann's vexatious litigant motion. But the "joinder" actually sought additional relief over and above the trustee's motion. Epson sought to extend the pre-filing order to adversary proceedings filed in Koshkalda's bankruptcy case – including the Epson Adversary Proceeding. In support of its joinder, Epson maintained that Koshkalda's frivolous filings and abusive litigation tactics occurred not only in the bankruptcy case but also in the district court Infringement Action and in the Epson Adversary Proceeding. Epson proceeded to discuss numerous specific examples of

Koshkalda's vexatious conduct in the Epson Adversary Proceeding. Koshkalda opposed both Schoenmann's motion and Epson's "joinder motion."

The bankruptcy court vacated the hearing and took the matter under submission. On February 18, 2020, the bankruptcy court entered its Vexatious Litigant Ruling, in which it granted Schoenmann and Epson the relief they requested. In its decision, the bankruptcy court detailed the history of Koshkalda's actions and examined roughly 44 of Koshkalda's filings in the bankruptcy case and the Epson Adversary Proceeding. In almost every instance, the bankruptcy court found that each specific paper was frivolous, filed with the intent to harass, or both.

The court then explained that the impetus for its ruling was not the sheer volume of papers Koshkalda filed, but "[r]ather, it is the lack of merit, falsity, and duplicative nature of the disputes instigated by Mr. Koshkalda that forces the court to its conclusion." The court went on to elaborate:

> Each and every time, Mr. Koshkalda raised arguments the court rejected, sometimes several times over. He made factual allegations that were half-true or completely untrue. He lied to the court repeatedly in order to evade Seiko Epson's efforts to trace allegedly fraudulent transfers in which Mr. Koshkalda had involved his parents. In this judge's seven years on the bench, no single litigant has soaked up and wasted more resources than Mr. Koshkalda.

The court further found that, as a result of Koshkalda's "frivolous

and harassing litigation," estate funds that otherwise could have been used to pay the estate's creditors would necessarily be used to compensate Schoenmann's counsel. The court therefore determined that entry of a pre-filing order in the bankruptcy case ("Case Pre-filing Order") would serve the best interests of the estate and its creditors. The court observed that Koshkalda's "strategy since the withdrawal of his counsel has been to impose as great a burden as possible on the court, on [Ms.] Schoenmann, and on Seiko Epson." The court, therefore, additionally concluded that it was appropriate to enter a pre-filing order in the Epson Adversary Proceeding as well ("Adversary Pre-filing Order").

The bankruptcy court entered both pre-filing orders on February 18, 2020. Koshkalda timely appealed both orders.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (J). We have jurisdiction under 28 U.S.C. § 158, subject to the finality issue discussed immediately below.

In non-bankruptcy federal civil litigation, pre-filing orders entered against parties are not final and appealable until a judgment is entered concluding the ligation. *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1055-56 (9th Cir. 2007). This is a concern for the Case Pre-filing Order because the bankruptcy case remains open. In contrast, the Adversary Pre-filing Order is final because the bankruptcy court already entered final

9

judgment in the Epson Adversary Proceeding.

We express no opinion as to whether principles of "pragmatic" or "flexible" finality applicable in bankruptcy cases render the Case Pre-filing Order final. *See generally Jue v. Liu (In re Liu)*, 611 B.R. 864, 870-79 (9th Cir. BAP 2020) (examining the finality of orders denying motions to dismiss bankruptcy cases). To the extent the appeal from the Case Pre-filing Order is interlocutory, we grant leave to appeal under Rule 8004(d). Because the Adversary Pre-filing order is final and immediately appealable as of right, and because the two appeals present factually-interrelated issues, delaying the appeal from the Case Pre-filing Order would do nothing but waste the resources of the courts and the parties. Under these circumstances, we grant leave to appeal. *See Galloway v. Ford (In re Galloway)*, BAP No. AZ-13-1085–PaKiTa, 2014 WL 4212621, at *4 n.9 (9th Cir. BAP Aug. 27, 2014) (granting leave to appeal under similar circumstances).

## ISSUE

Did the bankruptcy court abuse its discretion when it entered the pre-filing orders?

## STANDARD OF REVIEW

We review pre-filing orders entered against vexatious litigants for an abuse of discretion. *Ringgold-Lockhart v. Cty. of L.A.*, 761 F.3d 1057, 1062 (9th Cir. 2014); *Molski*, 500 F.3d at 1056. The bankruptcy court abuses its discretion if it applies an incorrect legal rule or its factual findings are

10

illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262–63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

Bankruptcy courts have inherent authority to sanction "bad faith" or "willful" litigation misconduct. *Dyer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003) (citing *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996)). This includes the power to sanction vexatious litigation occurring in that court. *In re Rainbow Magazine, Inc.*, 77 F.3d at 284.[3]

Before a court can impose pre-filing restrictions against a vexatious litigant, it must:

> (1) give litigants notice and an opportunity to oppose the order before it is entered; (2) compile an adequate record for appellate

---

[3] There is at least one additional source of authority presumably enabling bankruptcy courts to restrict the improper litigation tactics of vexatious litigants. Under the All Writs Act, 28 U.S.C. § 1651(a), "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This statute permits federal courts to enjoin abusive litigation activity. *Ringgold-Lockhart*, 761 F.3d at 1061 (citing *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990)). Though the Ninth Circuit has not specifically held whether bankruptcy courts fall within the scope of the All Writs Act, we have previously reached this conclusion. *See, e.g.*, *Sui v. Marshack (In re Sui)*, BAP No. CC-13-1572-TaSpD, 2014 WL 5840246, at *6 (9th Cir. BAP Nov. 10, 2014); *Richardson v. Melcher (In re Melcher)*, BAP No. NC–13–1168-DJKi. 2014 WL 1410235, at *9 (9th Cir. BAP Apr. 11, 2014); *see also Lakusta v. Evans (In re Lakusta)*, Case No. C 06-6105-PJH, 2007 WL 2255230, at *3 (N.D. Cal. Aug. 3, 2007), *aff'd*, 328 F. App'x 385 (9th Cir. 2009) ("Bankruptcy courts have the power to regulate vexatious litigation pursuant to 11 U.S.C. § 105(a) and 28 U.S.C. § 1651(a).").

review, including a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered.

*Ringgold-Lockhart*, 761 F.3d at 1062 (citations, brackets, and internal quotation marks omitted). The first two factors are procedural and the latter two are substantive. *Id.* (citing *Molski*, 500 F.3d at 1058). The first substantive factor assists the court in defining who qualifies as a vexatious litigant and the second substantive factor assists the court in tailoring an appropriate remedy. *Ringgold-Lockhart*, 761 F.3d at 1062.[4]

## A. Koshkalda had adequate notice and opportunity to oppose the entry of the pre-filing orders.

Koshkalda claims that he was denied adequate notice and a reasonable opportunity to oppose Schoenmann's vexatious litigant motion. As he puts it, the bankruptcy court specifically considered as evidence of his vexatious litigation no less than 44 of his filings, but Schoenmann's motion specifically addressed less than 11 of these filings. Thus, Koshkalda concludes that he had no way of knowing that his opposition needed to address the 33 additional papers the bankruptcy court relied on but

---

[4] Ringgold-Lockhart further indicated that *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986), provides a "helpful framework" for evaluating the two substantive factors. *Ringgold-Lockhart*, 761 F.3d at 1062 (quoting *Molski*, 500 F.3d at 1058 (9th Cir. 2007)). Though the bankruptcy court here did not specifically reference *Safir*, all of *Safir's* underlying considerations are subsumed within the Vexatious Litigant Ruling.

Schoenmann did not address.

Koshkalda frames his argument as a denial of due process. But the notice aspect of the due process requirement is a relatively minimal standard. *Strickland v. U.S. Tr. (In re Wojcik)*, 560 B.R. 763, 768 (9th Cir. BAP 2016). It merely requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Koshkalda completely ignores the filings specifically addressed in Epson's joinder, as well as the documents inter-related to those specifically addressed by Schoenmann and Epson. When these additional filings are accounted for, it turns out that the vast majority of the documents the bankruptcy court focused on were well within the focus of the vexatious litigant motion and the joinder.

More importantly, Schoenmann stated that the basis for her motion was "Koshkalda's filings in his bankruptcy case and the adversary proceedings." She reiterated her reliance on *all* of Koshkalda's filings elsewhere in her motion. Schoenmann additionally made it clear that, "Koshkalda's filings are not limited to the Bankruptcy Case and the Trustee's Adversary Proceeding, but also consist of numerous filings in the Seiko Epson Adversary Proceeding." Schoenmann's motion and Espon's joinder placed Koshkalda on notice that all of his bankruptcy case filings

13

and adversary proceeding filings were at issue. And it was clearly proper for the bankruptcy court to consider all of Kohskalda's filings. *See Ringgold-Lockhart*, 761 F.3d at 1063-64 (alleged vexatious litigant's entire litigation history can help inform the court's assessment of the litigant's conduct as abusive); *Molski*, 500 F.3d at 1058 (same). Koshkalda had sufficient notice that all of his filings in the bankruptcy case and the Epson Adversary Proceeding were in play when he filed his opposition.

Koshkalda alternately argues that he was denied due process because the bankruptcy court set a 10-page limit on his legal brief in support of his opposition. This argument is without merit. Koshkalda devoted just under four pages in his opposition to specifically and directly challenging Schoenmann's vexatious litigant motion. The remainder of his opposition is devoted to other matters.[5] Moreover, he has failed show that the page limit prevented him from presenting any evidence or arguments. There is simply no indication that he was prejudiced by the alleged lack of notice and opportunity to respond. *See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 776–77 (9th Cir. 2008).

Accordingly, we reject Koshkalda's due process arguments. The record establishes that he was provided adequate notice and a reasonable

---

[5] Furthermore, the bankruptcy court specified that its page limitation did not apply to declarations and exhibits filed in support of the opposition. In fact, Koshkalda filed a declaration with exhibits totaling more than 275 pages.

14

opportunity to oppose the entry of the pre-filing orders, and he did so.

**B.     The bankruptcy court compiled an adequate record for review.**

Koshkalda next argues that the bankruptcy court did not compile an adequate record for review. He contends that, even though the court specifically cited and discussed 44 of his filings as supporting its findings of frivolousness and harassment, this did not constitute an adequate record because Koshkalda was not provided with any opportunity to respond to most of them. This argument does nothing more than restate Koshkalda's due process argument in slightly different terms and does not address the adequacy of the record.

"An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *Ringgold-Lockhart*, 761 F.3d at 1063 (citing *De Long*, 912 F.2d at 1147). The bankruptcy court clearly detailed the filings it relied on in makings its decision. Its Vexatious Litigant Ruling complied with the necessary procedural requirements as set forth in *Ringgold-Lockart* and other Ninth Circuit precedent.

**C.     The bankruptcy court's findings of frivolousness and harassment were not clearly erroneous.**

Koshkalda's principal argument on appeal challenges the bankruptcy court's factual findings that his filings were frivolous and made for the purpose of harassment. Again we turn to *Ringgold-Lockhart*, which instructs

15

that before entering a pre-filing order,"it is incumbent on the court to make 'substantive findings as to the frivolous or harassing nature of the litigant's actions.'" *Id*. at 1064 (quoting *De Long*, 912 F.2d at 1148).

As for an evaluation of frivolousness for purposes of vexatiousness, the Ninth Circuit has emphasized that "[f]rivolous litigation is not limited to cases in which a legal claim is entirely without merit." *Molski*, 500 F.3d at 1060. Frivolous filings include those that have "some measure of a legitimate claim to make false assertions." *Id*. at 1060-61. Importantly, a frivolous filing alone is not enough. Neither is mere litigiousness. *Ringgold-Lockhart*, 761 F.3d at 1064. Rather, the frivolous filings must be "inordinate" in number. *Id*. Courts must, therefore, "look at 'both the number and content of the filings as indicia' of the frivolousness of the litigant's claims." *Id*. (quoting *De Long*, 912 F.2d at 1148).

The Ninth Circuit has explained that a pattern of harassment can be "an alternative to frivolousness" and can support a vexatious litigant finding. *Id*. at 1064. *Ringgold-Lockhart* cautioned, however, that "courts must be careful not to conclude that particular types of actions filed repetitiously are harassing, and must instead . . . discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court." *Id*. (quoting *De Long*, 912 F.2d at 1148 n.3) (internal brackets and quotation marks omitted).

The bankruptcy court entered detailed findings that Koshkalda made

16

numerous frivolous filings in a pattern of harassment throughout the Epson Adversary Proceeding and in the main case. Koshkalda contends that these findings are erroneous because he is right and the bankruptcy court was wrong. But Koshkalda has taken little or no concrete steps to point to meaningful error in the merits determinations of his underlying filings. Nor are we aware of any. As a result, and because the bankruptcy court articulated the correct legal standards for finding vexatious conduct, we focus our review on the court's findings of frivolousness and harassment largely to determine whether these findings are illogical, implausible, or unsupported by the record.

The bankruptcy court examined each of the 44 filings it identified and concluded that they were frivolous and filed to harass Schoenmann, Epson, or the court. Koshkalda argues that the court could not consider his actions in the Epson Adversary Proceeding, and that he was merely preserving his challenges to Schoenmann and Fox Rothschild while he awaited his opportunity to appeal the bankruptcy court's decisions not to remove them from his case.[6] We address the court's findings and Koshkalda's arguments against them within the context of the analysis articulated in *Ringgold.*

---

[6] At the time the issuance of this Panel's decision, the bankruptcy court's orders denying removal of Schoenmann and Fox Rothschild were not yet final and appealable.

17

**1. Koshkalda's actions in the Epson Adversary Proceeding.**

We begin with Koshkalda's actions in the Epson Adversary Proceeding as they are the first significant batch of activity identified by the court when considered chronologically. The court entered its first order resolving an informal discovery dispute on February 14, 2019, and entered its last order resolving an informal discovery dispute on June 12, 2019. The court entered ten other orders resolving informal discovery disputes between those dates.

Though both Epson and Koshkalda liberally invoked the court's informal discovery dispute resolution process, the bankruptcy court found that "all of these disputes arose because Mr. Koshkalda made unreasonable demands in propounding his own discovery or obstinately refused to cooperate in good faith with Seiko Epson's legitimate efforts to conduct discovery." In marching through the twelve discovery disputes, the court found most of them to be obstreperous and baseless efforts by Koshkalda to evade Epson's legitimate discovery. The court began its analysis noting that, though Koshkalda was proceeding pro se by this point, he knew that serious consequences could result from abusive discovery tactics given the case ending discovery sanctions imposed against him in Epson's district court Infringement Action. The bankruptcy court observed that Epson did not particularly distinguish itself in handling these disputes, but the court concluded that "[w]hile Seiko Epson's conduct was frustrating, it was clear

18

that Mr. Koshkalda was continuing to engage in abusive, harassing discovery tactics, which supports entry of a pre-filing order." Given that the bankruptcy court presided over the Epson Adversary Proceeding and these discovery disputes, it was uniquely situated to assess Koshkalda's actions and intent. Its determination of frivolousness and harassment with respect to the informal discovery disputes was not clearly erroneous.

Similarly, the bankruptcy court identified fifteen motions Koshkalda filed in the Epson Adversary Proceeding that supported the pre-filing orders. Of these, the court found that "[a]ll but two of these motions were entirely lacking in merit." Koshkalda filed seven of these motions during a two-week period between August 20 and September 3, 2019. The timing of these motions, the relief sought, and the content of the filings all reflected Koshkalda's strong desire to derail the resolution of Epson's motion for partial summary judgment. Indeed, in the process of evaluating one of these motions, the bankruptcy court stated: "The court believed then and believes now that this motion, and those upon which it was based, were filed for no purpose other than to delay this action, which means they were frivolous and they justify issuance of a pre-filing order." The record supports this finding.

Koshkalda argues that his actions in the Epson Adversary Proceeding cannot be considered as part of the vexatious litigant assessment because Epson failed to litigate whether they were frivolous or harassing in the

Epson Adversary Proceeding. He contends that issue and claim preclusion barred both Epson and Schoenmann from using any of his conduct in the Epson Adversary Proceeding to establish that he is a vexatious litigant. Issue preclusion does not apply because the vexatious litigant issue was not necessary to resolve Epson's discharge claims. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1022–23 (9th Cir. 2012) (holding that issue preclusion applied where the first district court "necessarily had to adjudicate" the same objections the same litigant raised in the second district court). And claim preclusion does not apply because the vexatious litigation "claims" did not exist as of the filing of the Epson Adversary Proceeding. *See Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1024 (9th Cir. 2019) (holding that claim preclusion did not bar claims that arose after first lawsuit was commenced). Additionally, Schoenmann was not a party to the Epson Adversary Proceeding. Therefore, she was not bound by it. *See Taylor v. Sturgell*, 553 U.S. 880, 892–96 (2008) (recognizing general rule prohibiting application of claim and issue preclusion against a person who was not a party in the previous lawsuit).

Kohskalda further argues that there are no cases in which a *defendant* has been determined to be a vexatious litigant. The absence of such cases makes sense. Implicit within the concept of vexatious litigation is volitional activity, and one does not volitionally undertake to be a serial defendant. Moreover, courts more commonly control defendants' abusive litigation

conduct by using other sanctions, including monetary and case terminating sanctions – as the district court employed against Koshkalda in the Infringement Action and as the bankruptcy court imposed in the Epson Adversary Proceeding.

In any event, by focusing on his role as the defendant, Koshkalda ignores the true significance of the bankruptcy court's assessment of his litigation conduct. The court relied on his actions to develop a broad picture of his intent to file frivolous matters for the purpose of harassing Schoenmann, Epson, and the court. As noted above, the court marched through 27 distinct examples of Koshkalda's litigation conduct in the Epson Adversary Proceeding , all of which, it concluded, evidenced his unwarranted and illegitimate efforts to frustrate Epson's discharge claims. Tellingly, Koshkalda offers no defense of these actions but rather merely states that they cannot be considered. We find no error with the bankruptcy court's use of Koshkalda's conduct in the Epson Adversary Proceeding to establish an overall pattern of frivolous and harassing filings.

2.      **Koshkalda's conduct in the main bankruptcy case.**

After the court entered its judgment against him in the Epson Adversary Proceeding, Koshkalda shifted his attention to the main case. The bankruptcy court observed that "[e]leven of [Koshkalda's motions] were filed during a frantic four-month period between September 23, 2019 and January 2, 2020, after the court denied Mr. Koshkalda's discharge." The

21

filings in the main case identified by the court as supporting the pre-filing orders reflected repeating patterns of conduct. The bankruptcy court noted that Koshkalda had filed numerous motions to compel Schoenmann to abandon estate property even when she was actively administering the asset or had a sale pending. The court listed two of Koshkalda's abandonment motions as the first instances of conduct demonstrating his specific intent to harass the estate with frivolous filings. At best, the repetitive nature of the frivolous abandonment motions reflected Koshkalda's intolerance for, and impatience with, Schoenmann's efforts to administer the estate's assets. At worst, the motions were part of a calculated and cynical scorched earth strategy that Koshkalda implemented with the intent to prevent his creditors – especially Epson – from ever recovering any significant amount from the liquidation and distribution of the estate's assets. The bankruptcy court found the latter. That finding was supported by the record and, hence, was not clearly erroneous.

After his counsel withdrew, Koshkalda began to attack Schoenmann and her professionals directly by belatedly challenging their employment and compensation. One of his first pro se challenges, filed late in 2018, sought to remove Schoenmann as trustee seven months into the case. Koshkalda based his request on Schoenmann's prior actions involving Epson – actions to which Koshkalda did not originally object.

Though the court identified the motion to remove Schoenmann as an

22

example of Koshkalda's litigousness, it did not identify it as a frivolous or harassing filing. Rather, it was the subsequent repetitive challenges that the court found frivolous and harassing. These challenges included: (1) a motion to disqualify Fox Rothschild as Schoenmann's counsel filed roughly a year after its employment, to which Koshkalda did not originally object despite notice; (2) objections to the professionals' interim fee applications; (3) a motion for authority to sue both Schoenmann and Fox Rothschild in state court, filed despite the denial of Koshkalda's prior challenges; (4) a motion to vacate as void the order authorizing Fox Rothschild's employment; and (5) various related reconsideration motions.

At the same time, Koshkalda continued his attempts to impede Schoenmann's efforts to administer the estate by opposing Schoenmann's compromise and sale motions. Koshkalda also continued to file additional abandonment motions – particularly those related to Koshkalda's asserted claims against Epson allegedly arising from Epson's prepetition seizure of Koshkalda's assets and its prosecution of the district court Infringement Action.

Additionally, Koshkalda consistently sought reconsideration of adverse rulings as a matter of course despite the bankruptcy court's repeated explanation of the limited grounds available to justify amendment or modification of court orders. As the court similarly explained in its review of filings in the Epson Adversary Proceeding, the motions for

reconsideration demonstrated "Mr. Koshkalda's habitual misuse of motions for reconsideration, which can only be granted on very narrow grounds. Rather than making any effort whatsoever to establish grounds for reconsideration, he uses them to rehash the same arguments he originally made or to raise additional arguments for the first time." The court found this to be strong evidence of Koshkalda's use of frivolous filings to harass the trustee, Epson, and the court.

In support of its Vexatious Litigant Ruling, the bankruptcy court also relied on six oppositions Koshkalda filed in the main bankruptcy case. The court's reliance on oppositions to support its Vexatious Litigant Ruling gives us pause and must be carefully examined. In *Ringgold-Lockhart*, the Ninth Circuit raised similar concerns when the district court partially based its determination of vexatiousness on the litigant's response to a tentative order. As *Ringgold-Lockhart* explained:

> Most troubling, the district court's list includes the Ringgolds' response to its tentative order finding them vexatious. As explained, the Ringgolds had a due process right to be heard on this matter. The district court faults the Ringgolds for "reiterating old facts and arguments" in their response to the court order. As the Ringgolds had to argue that their filings were not frivolous, such repetition was inevitable. What's more, the district court invited their response, so it is particularly inappropriate to hold it against them.

*Ringgold-Lockhart*, 761 F.2d at 1065.

Koshkalda similarly had a right to be heard in opposition to Schoenmann's motions.[7] While it is inappropriate to penalize Koshkalda for exercising this right, what he said in these oppositions and how he said it provided meaningful context for the court's frivolousness and harassment findings. Of the six oppositions, three of them were objections to the fee applications filed by Schoenmann and her professionals. Koshkalda did not challenge the billings, but rather continued to reargue his disagreement with Schoenmann's decision not to challenge Epson's $12 million claim or to actively pursue his asserted claims against Epson. By the time Koshkalda made these objections, the bankruptcy court already had considered and rejected as meritless Koshkalda's underlying positions a number of times in a number of different matters.

---

[7] Not all chapter 7 debtors have standing to challenge a trustee's administration of the bankruptcy estate. A debtor's standing to object to matters such as claims objections, allowance of fees, sales of property, and settlements generally depends upon having a pecuniary interest in the estate. Where the bankruptcy estate cannot pay all creditors in full and no surplus will be returned to the chapter 7 debtor, that debtor cannot generally demonstrate injury in fact to object to the trustee's administration of the estate and lacks standing. *An-Tze Cheng v. K&S Diversified Invs., Inc. (In re Cheng)*, 308 B.R. 448, 454 (9th Cir. BAP 2004), *aff'd*, 160 F. App'x 644 (9th Cir. 2005). But where the estate has a surplus to return to the debtor, or where a debtor's discharge is denied, that debtor has a pecuniary interest in the administration of the estate and has standing to challenge the trustee's actions. *Wellman v. Ziino (In re Wellman)*, 378 B.R. 416 (table), 2007 WL 4105275, at 1* n.5 (9th Cir. BAP Nov. 9, 2007)(unpublished) (citing *Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 429 (9th Cir. BAP 2005)). Here, Koshkalda had a pecuniary interest in the administration of the estate as a result of the denial of his discharge, and had standing to object to the trustee's administration of the estate.

The other three oppositions concerned proposed settlements of the estate's claims. Like the compensation-related objections, each of these three oppositions were founded on positions that lacked merit and which the court already had rejected in prior matters. Thus, even though the oppositions ordinarily should not be considered as direct evidence of vexatious conduct, here they provide additional context for the assessment of Koshkalda's other filings and for the bankruptcy court's findings that they were frivolous and harassing. The bankruptcy court's discussion of Koshkalda's oppositions does not constitute reversible error.

In summary, Koshkalda's filings run the gamut – from repeated challenges to Schoenmann's administration of the estate and continuous discovery disputes in the Epson Adversary Proceeding – to a never-ending battle against employment and compensation of Schoenmann and Fox Rothschild. Underlying the vast majority of Koshkalda's filings was his ongoing dispute with Epson. The bankruptcy court cogently described the interrelationship between his challenges against Schoenmann and Fox Rothschild, his efforts to thwart estate administration, his animus for Epson, and his disdain for any court ruling that might have resulted in Epson actually realizing a recovery on some part of its $12 million judgment. This is seen in both the Epson Adversary Proceeding and the main bankruptcy case. We find no error – clear or otherwise – in the bankruptcy court's frivolousness and harassment findings.

### 3. The number of Koshkalda's frivolous and harassing filings within his bankruptcy was inordinate.

Koshkalda contends that any pre-filing order against him is inappropriate because he only commenced his bankruptcy and was a defendant in the Epson Adversary Proceeding. He argues that his involvement in these proceedings cannot support a vexatious litigant finding because it lacks the required numerosity.[8] In support of his argument, he cites to *Ringgold-Lockhart*, where the Ninth Circuit reviewed a pre-filing order issued by the district court based primarily on the plaintiffs' motions practice in two federal lawsuits. *Id.* at 1064-65. The Ninth Circuit acknowledged that the two federal lawsuits commenced by the plaintiffs were "far fewer than what other courts have found inordinate." *Id.* at 1064-65 (citations and internal quotation marks omitted).

Importantly, the Ninth Circuit in *Ringgold-Lockhart* declined to set a minimum number of actions a litigant must commence before he or she can be found to be a vexatious litigant. It remarked, however, that "[s]uch a situation would at least be extremely unusual, in light of the alternative

---

[8] The Ninth Circuit's requirement that a litigant's vexatious claims must be inordinate arises within its discussion of frivolous filings. *In re Ringgold*, 761 F.3d at 1064; *Molski*, 500 F.3d at 1059. While not phrased in the same terms, any consideration of harassment in support of a pre-filing order also requires evidence of a pattern. *Ringgold-Lockhart*, 761 F.3d at 1064 (quoting *De Long*, 912 F.2d at 1148). Accordingly, our discussion concerning the numerosity of frivolous filings applies equally to the establishment of a pattern of harassment.

remedies available to district judges to control a litigant's behavior in individual cases." *Id.* at 1065. *Ringgold-Lockhart* emphasized that "[i]n light of the seriousness of restricting litigants' access to the courts, pre-filing orders should be a remedy of last resort." *Id.* at 1062. As a result, it considered the question of whether other remedies would be sufficient under the circumstances to be "particularly important." *Id.* This led the Ninth Circuit to conclude in *Ringgold-Lockhart* that the district court erred by failing to consider other remedies to curb the abuse, including sanctions under Civil Rule 11. *Id.* at 1065.

In the matter before us, the bankruptcy court attempted to address Koshkalda's actions through a series of increasingly severe sanctions. Initially, the court addressed Koshkalda's discovery abuses through an informal discovery dispute resolution process. Unfortunately, Kohskalda's abusive conduct in the Epson Adversary Proceeding continued with frivolous and harassing motions seeking to prevent discovery and forestall Epson's summary judgment motion. The court ultimately imposed monetary and issue terminating sanctions on Koshkalda, finding that he repeatedly lied to the court and baselessly refused to provide required contact information for his parents so that they could be deposed in regard to numerous challenged transfers involving them, Koshkalda and his affiliated business entities.

After Koshkalda shifted his attention to the main bankruptcy case,

the bankruptcy court similarly attempted to dissuade him from filing frivolous and harassing matters. The court denied a prior request to impose monetary sanctions against Kohskalda under 28 U.S.C. § 1927 for vexatiously and in bad faith multiplying the proceedings in the bankruptcy case. In its decision, the bankruptcy court explained that, at that time, it wanted to give leeway to Koshkalda as a pro se litigant and that it was not prepared to conclude at that time that he was motivated by an improper, bad-faith purpose – like harassment.

Yet, the record demonstrates that Koshkalda continued to press his complaints against Schoenmann's administration of the estate and Epson's claim despite prior rulings. While the court repeatedly described the actions undertaken in the identified filings as baseless, it typically made these determinations only after it had previously considered and rejected the same arguments in prior rulings. This appears to be why the court did not include the original motion to remove Schoenmann in its listing of frivolous and harassing matters. Rather, the court relied on subsequent filings that continued to relitigate the same underlying issues.

In a similar vein, the bankruptcy court identified as vexatious some but not all of Koshkalda's motions seeking to compel Schoenmann to abandon estate property. In fact, the court's identification of Koshkalda's frivolous abandonment motions begins with Koshkalda's *seventh* abandonment motion. The bankruptcy court did not rely on the prior six

abandonment motions (or two subsequently granted motions). After six prior orders explaining the standards for abandonment, there is no legitimate doubt that Koshkalda – even as a pro se litigant – was well aware of what must be shown. Yet, as the bankruptcy court pointed out, Koshkalda continued to seek abandonment of assets that Schoenmann actively was administering. This is illustrative of the vast majority of matters the bankruptcy court relied on to support its Vexatious Litigant Ruling. More importantly, this history amply demonstrates that the court considered and applied less severe sanctions in an attempt to control Koshkalda's conduct before it entered the pre-filing orders. At bottom, the lesser sanctions imposed support the conclusion that such sanctions did not, and would not, work with Koshkalda.

The bankruptcy court imposed the Case Pre-filing Order as a measure of last resort, and it did so amidst concerns that Koshkalda's filings were exhausting the bankruptcy estate. Both Schoenmann and the court expressed concerns that Koshkalda's actions were turning a solvent estate into one that was administratively insolvent without sufficient funds to pay the costs of administering the chapter 7 case, much less to make a distribution to unsecured creditors.

The Second Circuit considers whether or not a litigant has caused needless expense or posed an unnecessary burden when evaluating whether the challenged filings are frivolous and harassing. *Safir*, 792 F.2d at

30

24. While the Ninth Circuit did not specifically incorporate this consideration into its articulation of the vexatious litigant factors, it has more generally recognized that the *Safir* factors provide a "helpful framework" for considering whether filings are frivolous and whether a pre-filing order is narrowly tailored. *Molski*, 500 F3d at 1058.

An examination of unnecessary burden is particularly relevant in bankruptcy cases because vexatious litigation may waste the estate's limited resources and deprive creditors of any distribution. *See, e.g.*, *Tangwall v. Compton (In re Bertan)*, BAP No. AK–17–1139–LBF, 2018 WL 1704306 at *6 (9th Cir. BAP April 6, 2018) (affirming pre-filing order where bankruptcy court found that the litigant had "caused needless expense to other parties" and the trustee and court were concerned that the continued actions would needlessly "burden the bankruptcy estate's resources and the court"); *Melcher v. Richardson (In re Melcher)*, BAP No. NC–14–1573–TaDJu, 2015 WL 8161915 at *4 (9th Cir. BAP Dec. 7, 2015) (affirming pre-filing order where "[t]here is no question that a once solvent estate is now insolvent due to the Debtor's protracted efforts to stall the sale of Stonewall and other real properties"); *In re Sui*, 2014 WL 5840246 at *8 (vacating pre-filing order as inconsistent with Ninth Circuit authority, but quoting with approval the bankruptcy court's concern that repetitive filings had to stop or "there's not going to be any money left for anyone").

In support of his argument that he did not file an inordinate number

of frivolous and harassing matters, Koshkalda directs our attention to cases involving traditional litigation in which the vexatious litigant filed multiple lawsuits. But his argument ignores the reality of bankruptcy cases. As the Supreme Court has recognized"[a] bankruptcy case involves an 'aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 135 S. Ct. 1686, 1692 (2015) (quoting 1 Collier on Bankruptcy ¶ 5.08[1][b], p. 5-42 (16th ed. 2014)).

Though Koshkalda only commenced a single bankruptcy case, he initiated numerous disputes within the bankruptcy case and in the Epson Adversary Proceeding by pressing his unreasonable and baseless positions. This caused the bankruptcy estate to expend time and incur attorney fees to address frivolous matters in the main bankruptcy case. At the time the bankruptcy court imposed its Case Pre-filing Order, it had exhausted less drastic measures to no effect, and Koshkalda's pattern of filing frivolous and harassing matters was depleting the bankruptcy estate to the detriment of his creditors.

Koshkalda fails to state what effective sanctions the bankruptcy court could have imposed short of entering the Case Pre-filing Order. In general civil litigation, the court retains the ability to impose case ending sanctions against the offending party - as the district court did in the Infringement Action. *See generally Sui v. Marshack*, 691 F. App'x 374 (9th Cir. 2017)

(recognizing district court's inherent equitable power to impose case terminating sanctions (citing *TeleVideo Sys. Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987))). Bankruptcy cases, however, generally afford no similar opportunity. The closest analog to terminating sanctions in a chapter 7 bankruptcy is dismissal for cause, including a debtor's refusal to cooperate with the trustee. *See* § 707(a). But in some asset cases, dismissal of the chapter 7 case is exactly what the debtor wants. In this case, for instance, dismissal would have rewarded Koshkalda for his lack of cooperation by returning to him assets Schoenmann was in the process of liquidating for the benefit of the estate.

Denial of the debtor's discharge often is identified as another potential remedy for debtor misconduct. *See Law v. Siegel*, 571 U.S. 415, 427 (2014). But even if we assume that Kohskalda's litigation conduct could support denial of his discharge, he already had been denied his discharge on other grounds. *Law* also identified the court's sanctioning authority under Rule 9011, § 105(a), and the court's inherent powers as additional remedies available to the bankruptcy court to discourage debtor misbehavior. *Id.* In light of the denial of his discharge, however, Koshkalda already was saddled with a nondischargeable $12 million judgment debt despite being in bankruptcy for years. Under such circumstances, the imposition of monetary sanctions on top of a large nondischargeable debt typically is likely to have little or no effect in regulating a debtor's litigation

conduct. Even then, the estate would be left to collect from a litigious debtor with more than $12 million in nondischargeable debts.

As instructed by *Ringgold-Lockhart*, the bankruptcy court properly considered whether Koshkalda's frivolous and harassing filings were inordinate in number to support the pre-filing orders. It examined the relevant circumstances as appeared in this case, including: (1) Kohskalda's litigation history; (2) his patterns of frivolous and harassing filings; (3) the ineffectiveness of alternative remedies to control his behavior; and (4) the need to avoid further depletion of the bankruptcy estate. We acknowledge that the only action Koshkalda filed was his bankruptcy. Yet, the absence of multiple lawsuits does not mean that the bankruptcy court must stand by impotently while the estate's assets are exhausted to litigate Koshkalda's repetitive, frivolous, and harassing filings after other less severe measures have proven inadequate. The bankruptcy court properly took this into account when finding that Koshkalda's filings were inordinate and imposing the pre-filing orders as a matter of last resort.[9]

## D.    Necessity and narrow tailoring of pre-filing restrictions.

Though we agree that Koshkalda qualified as a vexatious litigant, *Ringgold-Lockhart* also requires that the pre-filing restrictions "must be

---

[9] Because we are reversing the Adversary Pre-filing Order on other grounds, we express no opinion whether the number of frivolous and harassing filings was inordinate for purposes of the Adversary Pre-filing Order.

narrowly tailored to the vexatious litigant's wrongful behavior." *Id.* at 1066 (quoting *Molski*, 500 F.3d at 1061). Therefore, we consider whether the bankruptcy court's pre-filing orders were necessary to prevent continuing vexatious conduct and whether the specific restrictions were narrowly tailored.

The Case Pre-filing Order required Koshkalda to submit for pre-filing review any proposed motions or other papers he desired to file that could impact – or oppose arguments made by – Schoenmann, Epson, their counsel, or the estate's professionals. This order further dictated that, as part of its pre-filing review, the court would determine whether the proposed motions or other papers had merit "such that they should be briefed and heard." The order excluded from the restrictions any notice of appeal filed from the Case Pre-filing Order or from the Vexatious Litigant Ruling. But it did not exclude notices of appeal that he might desire to file from any other court rulings the court might render. As for the Adversary Pre-filing Order, it contained similar provisions, but applied to proposed motions and papers impacting Epson, its employees, its agents, its affiliates, and its counsel.

In *Ringgold-Lockhart* the pre-filing order at issue was overbroad in two respects. First, the pre-filing order impermissibly provided for an assessment of the merits of the proposed new action. As *Ringgold-Lockhart* explained, the pre-filing screening process is ill-suited procedurally for a

merits determination. *Id*.

Second, the subject pre-filing order was overbroad because it restricted the vexatious litigants' ability to file *any* action pertaining to administration of state courts or probate courts. *Ringgold-Lockhart* reasoned that this restriction easily could extend to factual scenarios having nothing to do with the dispute at the heart of the vexatious litigation:

> Sometimes a rancorous dispute leaves a person with a bitter taste that does not fade, no matter how many resources are expended and no matter how many years pass. From our review of the case law discussing vexatious litigants, it is not uncommon for district courts to enjoin litigants from relitigating a *particular* case, such as when a litigant refuses to accept the finality of an adverse judgment. But in such cases, courts generally tailor the scope of a litigation restriction so as to restrain litigants from reopening litigation based on the facts and issues decided in previous lawsuits. The underlying litigation here attempts to reopen a case that has reached final judgment. A narrowly tailored injunction would address only filings in that or related actions.

*Id.* at 1067 (citations, internal brackets, and quotation marks omitted).

Koshkalda asserts that a pre-filing order was not necessary in either the bankruptcy case or in the Espon Adversary Proceeding. As the bankruptcy case remains open, Koshkalda's pattern of frivolous and harassing filings warrants the Case Pre-filing order. We agree, however, with Koshkalda that there was no need for a pre-filing order in the completed Epson Adversary Proceeding. As Koshkalda has pointed out, by

the time the court issued its Adversary Pre-filing Order, a final judgment already had been entered, he had commenced his appeal from that judgment, and he already had ceased filing papers in the Epson Adversary Proceeding.[10]

We are aware that Koshkalda filed three post-judgment motions in the Epson Adversary Proceeding: (1) a motion for reconsideration of the court's summary judgment ruling; (2) a motion for reconsideration of the court's order denying his motion to strike certain bank records produced by Epson after Epson obtained them from Bank of America; and (3) a motion to compel additional responses to his document production requests. The bankruptcy court did not list the summary judgment reconsideration motion as an example of Koshkalda's vexatious litigation conduct. Nor did it make any findings that this filing was frivolous or intended to harass. But the court did make frivolous and harassment findings as to the other two post-judgment motions.

Koshkalda filed the two frivolous post-judgment discovery motions in October 2019. After that, he did not file anything else in the Epson Adversary Proceeding before entry of the pre-filing orders several months later. Admittedly, these two motions were no less frivolous or harassing

---

[10] In contrast, for the same reasons we upheld, above, the bankruptcy court's frivolousness, harassment, and numerosity findings, we further hold that the Case Pre-filing Order was necessary.

than the court's other examples from the Epson Adversary Proceeding. Even so, under the circumstances, these two motions were insufficient to establish a continuing and ongoing need for the Adversary Pre-filing Order.

Additionally, Koshkalda argues that both pre-filing orders were overbroad. We also agree with this point. The pre-filing orders did not expressly limit their restrictions on filing to Koshkalda's bankruptcy case and to the Epson Adversary Proceeding. Since the court made no findings regarding frivolous or harassing filings outside of these two matters, there was no demonstrated need for broader restrictions. Indeed, neither Schoenmann nor Epson ever requested that the bankruptcy court impose broader restrictions. In addition, the Case Pre-filing Order also potentially infringed on Koshkalda's right to appeal from future orders entered in the bankruptcy case.

Finally, both pre-filing orders contravened *Ringgold-Lockhart*'s prohibition against pre-filing procedures that contemplate merits screening. As discussed above, *Ringgold-Lockhart* held that merits reviews should not be part of any narrowly-tailored pre-filing procedures imposed. *Ringgold-Lockhart*, 761 F.3d at 1066; *see also In re Sui*, 2014 WL 5840246, at *8.

## CONCLUSION

For the reasons set forth above, we VACATE AND REMAND with respect to the Case Pre-filing Order. On remand, the bankruptcy court will

need to amend the Case Pre-filing Order to remove any provision for a merits review as part of the pre-filing review process. It also should limit the scope of this order to cover only papers filed in Koshkalda's bankruptcy case and to exclude notices of appeal. As for the Adversary Pre-filing Order, we REVERSE.[11]

---

[11] In her responsive brief in NC-20-1051, Schoenmann has asked this Panel to enter a pre-filing order. She claims that Koshkalda has filed numerous, frivolous harassing appeals and that a BAP pre-filing order is necessary to prevent additional litigation misconduct. We disagree and hereby DENY that request. Most of his appeals have been dismissed as interlocutory. Bankruptcy finality is a complicated issue and continues to be an unsettled area of law. *See generally Bullard*, 575 U.S. 496, 135 S. Ct. at 1692–94 (explaining why an order denying confirmation of a chapter 13 plan is interlocutory); *see also In re Liu*, 611 B.R. at 872-73 (reiterating the Ninth Circuit's advice that "litigants in bankruptcy who are unsure about the finality of an order [should] file a notice of appeal to preserve their rights whether the matter was final or interlocutory"). Furthermore, the burden on appellees arising from interlocutory appeals, especially when we deny leave to appeal and dismiss them as interlocutory, is minimal.